**Theodore DECKER, Appellant,**

v.

**SQUARE D COMPANY and State Treasurer, Custodian of Second Injury Fund, Respondents.**

**No. WD 54777.**

Missouri Court of Appeals,
Western District.

Aug. 25, 1998.

Randall B. Johnston, Columbia, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Anthony Horvath, Asst. Atty. Gen., Jefferson City, for Respondents.

SPINDEN, Judge.

Theodore Decker appeals the Labor and Industrial Relations Commission's decision to deny him workers' compensation benefits from the Second Injury Fund. He contends that the commission's decision was against the overwhelming weight of the evidence and that the commission based its decision on insubstantial medical opinion testimony. We disagree and affirm the commission's decision.

On February 19, 1996, Decker complained to his employer, Square D Company, of pain and numbness in his right hand and arm. His employer sent him to consult a physician, Glen Cooper. Decker told Cooper that he felt sudden pain in his right arm and numbness in his hand when he reached into a bin. Cooper concluded that the pain was remarkable because it was sudden and without apparent cause. Cooper asked Decker to return the next day so he could determine whether the symptoms had subsided. When Decker returned the next day, Cooper opined that the injury was not related to work and advised Decker to see his family physician.

Cooper said, "I tried to explain in very clear terms I did not feel comfortable pursuing a clinical course of painful numb arm in a diabetic based on the fact the onset occurred as a result of a simple reaching without lifting. The patient did not reach multiple times before the onset." Cooper further explained:

Some of the things that could have occurred in this gentleman that may have needed other attention would have been a stroke. The guy has a numb painful arm. He's a diabetic. They are known to have vascular events. There's many things the family doctor should consider in a painful numb arm which is why I felt that it was no longer proper to treat it in the ["]Work Comp["] venue.

On March 11, 1996, Decker again felt pain and numbness in his right hand and arm and returned to Cooper's office. Decker told Cooper that he felt pain suddenly when he used his right hand to activate a machine, which he was running. Cooper diagnosed the cause as "ulnar neuritis of undetermined origin and an insulin dependent diabetic." Cooper said that the symptoms resembled neuropathy and that he detected no pattern between this episode and the one on February 19. He said that, although the March 11 episode did not appear to be related directly to a work activity, he decided to visit Decker's workplace to investigate further.

On March 15, 1996, Cooper visited Decker's workplace and reviewed Decker's duties. Cooper decided that Decker's duties did not cause his injury. Cooper said, "I could not correlate the onset of his pain with the work related activity after visiting the plant. I explained that the sudden onset of his symptoms did not correlate with any activity that I observed."

On March 22, 1996, Decker went to see John Havey, an orthopedic surgeon. Havey advised Decker not to work for two weeks, and he prescribed anti-inflammatories for pain. On April 4, 1996, Havey told Decker that he should be able to return to work.

On May 6, 1996, Decker felt pain, numbness and swelling in both hands and forearms and returned to Havey's office four

days later. Havey diagnosed the problem to be carpal tunnel syndrome. On May 22, 1996, Havey performed surgery on Decker's left wrist. About five months later, according to Havey, Decker still suffered carpal tunnel syndrome in his left wrist.

Decker had suffered diabetes since he was 13 years of age and was insulin-dependent. He had suffered a number of right shoulder dislocations and ganglion cysts on the right wrist, which required surgery. In 1985, Decker had surgery on his right wrist for carpal tunnel syndrome. In 1993, he was diagnosed with tendinitis and neuritis in his left wrist.

In addition to his work at Square D, Decker worked 10 to 30 hours a week, from January through May 1996, at an auto parts store as a "parts person." During December 1995 and January 1996, he rebuilt two vehicle engines.

On April 11, 1996, Decker filed a claim for workers' compensation for injuries to his "[r]ight arm, forearm from elbow to hand and fingers" which he claimed occurred on March 12, 1996, from "running trip bar assembly, placing parts into nest—repetitive motion." On July 16, 1996, he filed another claim for injuries to his "[l]eft arm, forearm from elbow to hand and fingers, bilateral carpal syndrome and the body as a whole" which he claimed was ongoing and resulted from "[r]epetitive motion of both hands and arms required by employment at Square D." The commission's administrative law judge ruled that Decker was not entitled to workers' compensation because he had not proven that his employment caused his injuries. The commission adopted the administrative law judge's decision by a 2–1 vote. Decker appeals.

 Decker contends that the commission's decision is against the overwhelming weight of the evidence and that the commission based its decision on insubstantial medical opinion testimony. He asserts that his medical expert, Havey, testified that Decker's carpal tunnel syndrome was caused by his work and that Square D and the State Treasurer did not rebut this evidence. We disagree.

 We will affirm the commission's decision if it is supported by substantial and competent evidence and is not clearly against the overwhelming weight of the evidence. *Davis v. Research Medical Center*, 903 S.W.2d 557, 571 (Mo.App.1995). In cases in which a worker seeks compensation for carpal tunnel syndrome, he or she must submit a medical expert who can establish a probability that working conditions caused the disease, even if the disease was not an injury's sole cause. *Hayes v. Hudson Foods, Inc.*, 818 S.W.2d 296, 299 (Mo.App.1991). The evidence must establish a direct causal link between the worker's workplace or job duties and the injury-causing disease. *Estes v. Noranda Aluminum, Inc.*, 574 S.W.2d 34, 38 (Mo.App.1978).

Substantial and competent evidence supported the commission's decision. The decision was not against the overwhelming weight of the evidence. Cooper testified that, in his opinion, Decker's injuries were not work-related. He said that the sudden numbness which Decker felt was not consistent with carpal tunnel syndrome. When asked whether Decker's injuries would have occurred even had he not had repetitive duties to perform, Cooper said, "[A]t no time do we see spontaneous onset of symptoms after 14 years of work. We see cumulative trauma. And this is absolutely[,] positively[,] not the history given by a cumulative trauma patient." Cooper admitted that, during the time he saw Decker, Decker may have had a precursor to carpal tunnel, but he said that he could still "absolutely" rule out job duties as the cause of Decker's injuries.

Decker ignores Cooper's testimony and relies instead on Havey's opinion. Asked about his opinion of whether Decker's injuries were related to his job duties, Havey said:

> [I]t's my impression that based on experience with patients like this that carpal tunnel syndrome certainly, as well as many other conditions, tendinitis, [et cetera,] can be definitely related to jobs and specifically jobs that require repetitive motion, gripping, grasping, [et cetera].... And Mr. Decker does do this and has done this for some years, and I definitely think that his condition is related to his work. As to

whether it caused it or whether it exacerbated, I think it's arguable. But nonetheless, we see patients all the time like Mr. Decker who develop carpal tunnel syndrome and other tendonitis conditions from repetitive work. So I think that absolutely would be my opinion, that his work at least exacerbated it, if did not cause it.

The administrative law judge and the commission found Havey's testimony to be "less than persuasive."[1]

■ In essence, Decker is challenging the commission's choice between two conflicting medical opinions. We defer to the commission on issues of witnesses' credibility and the weight to be accorded their testimony. *Bruflat v. Mister Guy, Inc.*, 933 S.W.2d 829, 835 (Mo.App.1996). The commission's choice of one medical opinion over another is binding on us unless the choice clearly results from an abuse of discretion. *Id.* We do not discern an abuse of discretion. The commission gave Havey's testimony little weight, if any, and concluded from "all [of] the evidence"—including Cooper's testimony—that Decker did not establish causation. We defer to the commission's determination of the weight to be given Havey's testimony. Decker's contention is without merit.

■ In his second point, Decker complains that the commission erred in denying his claim for workers' compensation because his "evidence establishing the causation of his medical condition was unrebutted in that there was no competent and substantial medical evidence presented indicating that [his]

carpal tunnel syndrome was caused by his diabetes." Decker's argument ignores, however, that in a workers' compensation case the claimant has the burden of proving all essential elements of a claim, including causation. *Id.* Square D was not obligated to establish that diabetes caused Decker's carpal tunnel syndrome. Instead, Decker was obligated to establish a direct causal link between his job duties or his workplace and the disease. *Estes,* 574 S.W.2d at 38.

■ Square D offered Cooper's testimony that diabetes could have been a cause of Decker's carpal tunnel syndrome. In cases in which more than one event could have caused a condition but only one is compensable, a claimant has the burden of proving the nature and extent of disability attributable to his or her job duties or workplace. *Bruflat,* 933 S.W.2d at 835. Decker did not meet this burden.

Substantial and competent evidence supported the commission's decision, and the commission's decision was not against the overwhelming weight of the evidence.[2] We affirm.

HOWARD, P.J., and BRECKENRIDGE, J., concur.

---

1. The administrative law judge's decision, which was incorporated by the commission in its final award, said, "Dr. Havey's testimony that 'his work at least exacerbated it, if did not cause it' leaves some unanswered questions. The term 'exacerbated' has no particular medical meaning. In common parlance, 'exacerbate' means 'irritate' or 'aggravate.' There is no medical evidence as to what degree [Decker's] work for [Square D] 'exacerbated,' 'irritated' or 'aggravated' [Decker's] condition. Did the work for [Square D] 'exacerbate' [Decker's] condition to such a degree that it was 'a substantial factor in causing the injury'? Did the work for [Square D] 'exacerbate' [Decker's] condition to such a degree that the employment is a 'proximate cause'? Or was the 'exacerbation' a mere 'precipitating factor'? In my opinion, Dr. Havey did not answer those questions, directly or indirectly,

nor was he given the opportunity to do so.... Considering Dr. Havey's equivocal statement regarding the causation of [Decker's] conditions, in conjunction with 'all the evidence,' I do not believe that causation of an occupational disease or diseases has been established."

2. In his reply brief, Decker asserts in his points relied on that the commission erred in denying his claim for workers' compensation because (1) the commission applied the wrong legal standard for "substantial factor" and "proximate cause" and (2) Cooper's testimony was not competent to show that Decker's condition was not work-related. Issues not raised in an appellant's opening brief, however, cannot be raised for the first time in the reply brief. *Knopke v. Knopke,* 837 S.W.2d 907, 923 (Mo.App.1992).