Elaine CASTEEL, Appellant,

v.

GENERAL COUNCIL OF the ASSEM-
BLIES OF GOD, and the Treasurer of
the State of Missouri, as Custodian
for the Second Injury Fund, Respon-
dents.

No. 28908.

Missouri Court of Appeals,
Southern District,
Division One.

June 19, 2008.

Randy Charles Alberhasky, The Alberhasky Law Firm, P.C., Springfield, for Appellant.

Jerry A. Harmison, Jr., Harmison & Pearman, P.C., Springfield, for Respondent General Council of the Assemblies of God.

DANIEL E. SCOTT, Judge.

Elaine Casteel (Claimant) filed two workers' compensation claims against her above-referenced employer (Employer) and the Second Injury Fund (the Fund).[1] One was an accident claim for neck, shoulder, and other injuries from a workplace fall. The other was an occupational disease claim for neck, shoulder, and other injuries allegedly caused by the repetitive nature of her work. She used the same

medical experts to support both claims; Employer did similarly in defense; and the claims were tried simultaneously.

### Accident Claim

■ Claimant's expert, Dr. Swaim, opined in the accident case that Claimant's fall caused permanent partial disabilities (PPD) of 22%, 15%, and 10% to her neck, right shoulder, and left shoulder respectively. Employer's expert, Dr. Woodward, found no such disabilities. The ALJ believed Dr. Swaim on these issues; accepted his PPD ratings; and ordered Employer to pay 146 weeks of PPD therefor. Claimant was awarded an additional 29.625 weeks of PPD from the Fund, based on Dr. Swaim's ratings for Claimant's pre-existing arm fracture, deep-vein thrombosis, and lumbar condition. No one has appealed these rulings.

### Occupational Disease Claim

The ALJ considered Dr. Woodward's opinions more persuasive in the occupational disease case, and "based largely" thereon, concluded that "the evidence does not support a finding of occupational disease." It is this decision, unanimously affirmed and adopted by the Labor and Industrial Relations Commission, from which Claimant now appeals.

At the hearing, Claimant's burden was to prove a direct causal relationship between her work conditions and an occupational disease, and that her work was a substantial factor in causing her medical condition or disability. *Kuykendall v. Gates Rubber Co.*, 207 S.W.3d 694, 704 (Mo.App.2006). The ALJ, and ultimately the Commission, found otherwise:

---

1. The Fund compensates injured employees when a current work-related injury combines with a prior disability to create an increased

combined disability. *Stonecipher v. Poplar Bluff R1 School Dist.*, 205 S.W.3d 326, 327 (Mo.App.2006).

After carefully considering all of the evidence, I find that the evidence does not support a finding of occupational disease. This is based largely on the opinion of Dr. Woodward. He did not feel that the claimant's regular work duties would substantially contribute to a cervical repetitive trauma condition sufficiently to contribute to cervical spondylosis or degenerative arthritis in the neck. Although his opinion is based on the video, which the claimant testified did not include some lifting and the tearing of the "breaking signatures," I find Dr. Woodward's opinion more persuasive. The omitted activities were done intermittently, and the claimant has clearly had other traumatic injuries to her neck in the form of auto accidents and falls. Therefore, this claim is denied.

On appeal, Claimant attacks Dr. Woodward's opinions, alleging they lacked foundation because the doctor (1) "relied solely" on a video that did not depict all of Claimant's job duties; and (2) did not examine Claimant or take her history relating to her occupational claim. Claimant contends the Commission exceeded its powers in admitting Dr. Woodward's "inadmissible opinions," and that the record cannot support the award without them.

## Principles of Review

■ Our review is limited. The factual finding that Claimant had no occupational disease [2] binds us if supported by competent and substantial evidence in the context of the whole record. *See Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003).[3] This standard is not met "in the rare case when the award is contrary to the overwhelming weight of the evidence." *Id.* at 223.

■ Moreover, we defer to the Commission's assessment of witness credibility and the weight given to testimony. *Hawthorne v. Lester E. Cox Medical Centers,* 165 S.W.3d 587, 592 (Mo.App.2005). It was for the Commission to accept or reject medical evidence. *Id.* at 595. Nor will we overturn its decisions on the admissibility of evidence absent an abuse of discretion. *Garrett v. Treasurer of State of Missouri,* 215 S.W.3d 244, 249 (Mo.App.2007).

We apply these rules to the ALJ's decision, since the Commission adopted it as its final award. *Hawthorne,* 165 S.W.3d at 592.

## Analysis

We first reject Claimant's assertion that Dr. Woodward "relied solely" on the video. Dr. Woodward was the treating physician for Claimant's workplace fall. He had examined Claimant, and taken or updated her medical history, multiple times in a 15–month period partially overlapping her assertion of this occupational disease claim involving similar parts of her body. He reviewed the video, but he also considered his examinations of Claimant and reviewed employment records, various medical records, and deposition transcripts in connection with his opinions.

■ As to the video itself, Claimant contends that it failed to depict all her work activities, particularly the "breaking" pro-

---

**2.** *See, e.g., Lorenz v. Sweetheart Cup Co.,* 60 S.W.3d 677, 685 (Mo.App.2001). Although our earlier quotation from the award clearly makes factual findings, it was mistitled "Conclusions of Law."

**3.** We cite several cases herein that were among many overruled by *Hampton* on an unrelated issue. *See* 121 S.W.3d at 224–32. Such cases do not otherwise conflict with *Hampton* and are cited for legal principles unaffected thereby; thus we will not further note *Hampton's* effect thereon.

cess cited by her experts. Yet at the hearing, Claimant admitted that breaking projects occurred just 4–5 times annually; the video "fairly and accurately depicts the work done in the bindery department, with the exception of the periodic isolated situation such as the breaking and things of that sort;" and depending on the jobs coming in, "if we walked in the bindery department right now and videotaped the work being done, what's shown on [the video] is what we would probably see." Thus, it was no abuse of discretion to admit the video. *See Garrett,* 215 S.W.3d at 249.

 Moreover, when Dr. Woodward's testimony was offered as evidence, Claimant raised only "the foundational objections from the video," but not the other foundational complaints she now asserts. Since it was proper to admit the video, it also was proper to overrule Claimant's sole objection based thereon, and to admit and consider Dr. Woodward's testimony. Then it was for the Commission to resolve the conflicting medical evidence, and within its discretion to give Dr. Woodward's opinions more weight in this case, just as it gave Dr. Swaim's opinions greater weight than those of Dr. Woodward in the accident case.

"With regard to factual issues, the appellate court defers to the ... Commission's decisions regarding the weight given to witnesses' testimony, and is bound by the Commission's factual determinations when the evidence supports either of two opposing findings." *Kent [v. Goodyear Tire and Rubber Co.,* 147 S.W.3d 865, 868 (Mo.App.2004) ]. " 'The acceptance or rejection of medical evidence is for the Commission.' " *Russell [v. Invensys Cooking & Refrigeration,* 174 S.W.3d 15, 23 (Mo.App.2005) ] *(quoting Sullivan v. Masters Jackson Paving Co.,* 35 S.W.3d 879, 884 (Mo.App. 2001)). Furthermore, as a reviewing

court, we "may not substitute [our] judgment for that of the Commission's as to the issue of witness credibility." *Tangblade v. Lear Corp.,* 58 S.W.3d 662, 670 (Mo.App.2001).... "We will uphold the Commission's 'decision to accept one of two conflicting medical opinions' if such a finding is supported by competent and substantial evidence." *Id. (quoting Birdsong v. Waste Mgmt.,* 147 S.W.3d 132, 137 (Mo.App.2004)).

*Kuykendall,* 207 S.W.3d at 706.

### Conclusion

The Commission did not abuse its discretion, nor act in excess of its powers, in admitting the video or Dr. Woodward's testimony. The record supports the Commission's decision to credit Dr. Woodward's opinions in this case, as it had discounted them in the other. Finally, this is not "the rare case when the award is contrary to the overwhelming weight of the evidence." *Hampton,* 121 S.W.3d at 223. We affirm the Commission's award.

PARRISH, P.J., and BATES, J., Concur.