**Tom LINGO, Appellant,**

v.

**MIDWEST BLOCK AND BRICK, INC., Respondent.**

**No. WD 71501.**

Missouri Court of Appeals,
Western District.

April 13, 2010.

George J. Miller, Eureka, MO, for Appellant.

Thomas V. Clinkenbeard, Kansas City, MO, for Respondent.

Before JAMES EDWARD WELSH, P.J., MARK D. PFEIFFER, and KAREN KING MITCHELL, JJ.

JAMES EDWARD WELSH, Presiding Judge.

Tom Lingo appeals the Labor and Industrial Relation Commission's partial denial of his workers' compensation claim for permanent total disability benefits. Lingo asserts that the Commission's determination that he did not sustain a traumatic brain injury as a result of an accident that arose out of and in the course of his employment with Midwest Block and Brick, Inc., was not supported by sufficient and substantial evidence and was against the overwhelming weight of the evidence. We affirm.

Lingo worked for Midwest Block and Brick, Inc., filling and packaging bags of cement. According to Lingo, a properly filled cement bag would weigh 94 pounds. On July 21, 1994, when Lingo was moving a bag of cement, which he believed was overfilled to 200 pounds, from the filling machine to a pallet, the cement bag burst. According to Lingo, when a bag is overfilled with cement, a bag can burst, creating a shotgun-like sound and distributing cement into the air. Lingo said that, when the bag burst, his head was turned to the side and his right ear was about a foot from the bag. Lingo did not recall the events immediately after the bag burst, but apparently Lingo was carried outside

the building by other employees. Lingo remembered being outside and being completely covered with cement. He also recalled feeling nauseous and dizzy and bleeding from his right ear. In the almost fourteen years, between the accident and the hearing on Lingo's claim for workers' compensation, Lingo was seen by several doctors for the injuries he claims were causally related to his work accident.

Lingo reported the injury to the Division of Workers' Compensation on August 5, 1994. He then filed a workers' compensation claim on September 14, 1995, and amended claims for compensation on September 29, 1995, and August 17, 2001. In his last amended claim for compensation, Lingo asserted that these parts of his body were injured by the accident that occurred on July 21, 1994: "head, right ear, left ear, traumatic brain injury, dementia due to traumatic brain injury, exacerbation of hypertension, depression, neuropsychological dysfunction, vestibular injury, vertigo, perforated tympanic membrane of the right ear, contralateral Meniere's Disease, dizziness, bilateral hearing loss." The Division's Administrative Law Judge (ALJ) held a hearing on February 7, 2008, and issued a final award on April 3, 2008. In the award, the ALJ concluded:

> Mr. Lingo has sustained his burden of proof that he has traces of tinnitus in his right ear, as well as scarring on the right tympanic membrane, related to the breaking of a bag of cement on July 21, 1994.

> Mr. Lingo failed to prove that any disability related to or resulting from the left ear was caused by the July 21, 1994, accident. Whether Mr. Lingo has Meniere's Disease in his left ear or just Meniere's like symptoms in that ear is irrelevant. For the first seventeen months following July 21, 1994, there is no evidence of anything other than a normal exam of the left ear....

> Likewise, Mr. Lingo failed to sustain his burden of proof that he sustained a traumatic brain injury as the result of the events of July 21, 1994. There is no evidence of anything resembling a brain injury in any of the medical records contemporaneous with the accident or in any of the medical records from a treating physician. The only testimony regarding traumatic brain injury is from experts who were told that Mr. Lingo had sustained a traumatic brain injury and were then asked to opine based on the information supplied to them.

> As a result of the damage to the right ear sustained on July 21, 1994, Mr. Lingo has sustained a permanent disability of 15% of the body as a whole. No permanent disability is awarded for complications to or injury in the left ear or for a traumatic brain injury.

On August 20, 2009, the Labor and Industrial Relations Commission affirmed the ALJ's award and attached and incorporated the ALJ's award and decision to its final award.

In his sole point on appeal, Lingo asserts that the Commission's determination that he did not sustain a traumatic brain injury as a result of an accident on July 21, 1994, was not supported by sufficient and substantial evidence and was against the overwhelming weight of the evidence. We disagree.

 We review the findings of the Commission and not those of the ALJ. *Clayton v. Langco Tool & Plastics, Inc.,* 221 S.W.3d 490, 491 (Mo.App.2007). However, where the Commission's award attaches and incorporates the ALJ's award and decision, as in this case, we consider the findings and conclusions of the Commission as including the ALJ's award. *Id.* This court may modify, reverse, remand

for rehearing, or set aside the award of the Commission only if it determines that the Commission acted in excess of its powers, that the award was procured by fraud, that the facts found by the Commission do not support the award, or that there was not sufficient competent evidence in the record to warrant making the award. § 287.495, RSMo 2000. We review the whole record to determine whether there is sufficient competent and substantial evidence to support the award or if the award is contrary to the overwhelming weight of the evidence. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003).

■■■ "To be entitled to workers' compensation benefits, the claimant has the burden of proving ... that the alleged injury ... was directly caused by the accident. In other words, a claimant must establish a causal connection between the accident and the compensable injury." *Kerns v. Midwest Conveyor,* 126 S.W.3d 445, 453 (Mo.App.2004) (citation omitted). "Medical causation, which is not within common knowledge or experience, must be established by scientific or medical evidence showing the relationship between the complained of condition and the asserted cause." *Gordon v. City of Ellisville,* 268 S.W.3d 454, 461 (Mo.App.2008).

■ In support of his contention that he suffered a traumatic brain injury and that the Commission's decision was against the weight of the evidence, Lingo relies on the testimony from seven experts. First, Lingo notes that one of his treating physicians, Dr. Lawrence Nichols, stated in a progress note on October 18, 1994, that Lingo had "neurologic changes" but said that the "etiology [was] uncertain." Nichols also stated in a letter to a claims representative on January 25, 1995, that he had seen Lingo "on several occasions with vertiginous episodes, nausea, disequi-

librium and right tympanic membrane perforation." In the letter, Nichols also said that, in his opinion, "there is no question that this gentleman suffered a work related injury which has prevented him from seeking gainful employment since the injury occurred."

Second, Lingo points to the progress notes of Dr. David Marty, who also treated Lingo. In his report, Marty noted that Lingo had "persistent disequilibrium and nausea" and balance disturbance issues. Marty diagnosed Lingo as suffering from traumatic TM perforation and central vertigo.

Third, Lingo relies on a letter to an insurance representative written by Dr. Jacques Herzog, who was a treating physician who performed surgery on Lingo's right ear. In this letter, Herzog noted that even after surgery to Lingo's right ear, Lingo continued to have complaints of nausea with vertigo. According to Herzog:

Subjectively, [Lingo's] symptoms of vertigo gradually improved, however he continued to have some symptoms present. Eventually, the tympanic membrane [in the right ear] healed and the graft utilized to reconstruct the perforation had a 100% take. On July 25, 1995, Mr. Lingo was found to have much improved symptoms with only isolated episodes of vertigo. Further, there was no evidence of dizziness with pneumatic otoscopy, suggesting the absence of a fistula at that time. He did however have complaints of persistent dysequilibrium.... In view of the continued complaints of persistent dysequilibrium, as well as intermittent episodes of severe vertigo, an audiogram was obtained on November 26, 1995. At that time, he was found to have normal hearing in the right ear. The left ear however at this time, revealed decreased

thresholds with mild vertigo noted on tympanometry, although pneumatic otoscopy revealed no evidence of dizziness. This is quite an unusual development as it was noted that the right ear was the site of the original pathology and in fact, while there was preoperative hearing loss in the right, there was no evidence of auditory deficit at this time. The more recent onset of hearing loss on the left side was somewhat concerning suggesting a new onset of left labyrinthine involvement. As such Electronystagmography was obtained. This study revealed abnormalities suggesting a mild central etiology, although there was no significant lateralization on caloric studies.

This picture of varying symptoms and more recent involvement of the opposite ear was somewhat unusual. It is my feeling that in the course of this problem, Mr. Lingo has developed Meniere's Disease on the left side. This is a disorder of the labyrinth, manifested by symptoms of aural pressure, fullness, fluctuation of hearing and intermittent vertigo, all of which he is currently describing. . . . The concern revolves around the etiology of the Meniere's Disease. Most cases are idiopathic. While Meniere's related symptoms may occur due to head injury, it would be very difficult to explain delayed development of symptoms on the left following trauma to the right side of the head. . . .

Fourth, Lingo relies on the deposition testimony of Dr. Aaron Koonce, a neurologist. Koonce said that Lingo had problems with vertigo, dizziness, and balancing difficulties. Koonce diagnosed Lingo as having limited cognitive function and a "post-traumatic injury of the inner ear or the nerves connecting the inner ears to the brain."

These four experts, however, do not support Lingo's contention that the Commission's decision that he failed to sustain his burden that he sustained a traumatic brain injury as a result of the July 21, 1994 work accident was against the overwhelming weight of the evidence. Nichols, Marty, Herzog, and Koonce never said that Lingo suffered a traumatic brain injury as a result of the July 21, 1994 work accident.

The fifth expert's testimony upon which Lingo relies is Brick Johnstone, a neuropsychologist. Lingo was referred to Johnstone for evaluation by a vocational rehabilitation counselor. According to Johnstone, vocational rehabilitation sent Lingo to him and said, "We have somebody here with a brain injury. Evaluate him for us and find out how this has affected him and help us plan for his future." Johnstone said, based on that information, he knew that Lingo had "come in and claimed a brain injury [and] that's what his reported disability was." Johnstone said that, based upon the Axis III test "which is the place where you diagnose major medical disorders," he diagnosed Lingo with traumatic brain injury. He said that he believed the cause of the traumatic brain injury was due to the July 21, 1994 work accident but that he was basing his decision upon information that he was provided. He admitted that, when he saw Lingo, he did not have any of Lingo's medical records and that all the information he obtained was from Lingo's "self-report."

The sixth expert that Lingo relies upon is John Hogg, a neuropsychologist. Lingo was referred to Hogg by his attorney. Hogg said that he reviewed Lingo's medical records. According to Hogg, "Dr. Johnstone's neuropsychological evaluation indicated global cognitive deficits with notable right hemisphere findings secondary to traumatic brain injury." He said that

his testing of Lingo was "as expected with the normal course of recovering following a traumatic brain injury." Hogg diagnosed Lingo as suffering from mild cognitive difficulty. He said that in making that diagnosis he assumed that Lingo suffered a traumatic brain injury.

The seventh expert upon which Lingo relies is Dr. Brent Koprivica. Koprivica said that Lingo had a traumatic brain injury that resulted in neuropsychological dysfunction proven by neuropsychological testing. Koprivica acknowledged that he did not perform the neuropsychological testing but that he had reviewed Johnstone's testing and report.

The Commission concluded that the only testimony regarding traumatic brain injury was from experts who were told that Lingo had sustained a traumatic brain injury during the July 21, 1994 work accident. The testimonies provided by Johnstone, Hogg, and Koprivica were consistent with the Commission's conclusion.

Lingo did not meet his burden of proving that he sustained a traumatic brain injury that was directly caused by the work accident. Given that no medical evidence established the presence of a traumatic brain injury as a result of the July 21, 1994 work accident, the Commission's decision that Lingo did not sustain a traumatic brain injury as a result of the work accident was supported by sufficient competent and substantial evidence and was not contrary to the overwhelming weight of the evidence. We, therefore, affirm the Commission's decision.

All concur.