Angela BOND, Appellant,

v.

SITE LINE SURVEYING, Respondent,

Treasurer of the State of Missouri–Custodian of the Second Injury Fund, Respondent.

No. WD 72142.

Missouri Court of Appeals, Western District.

Oct. 12, 2010.

David A. Slocum, for Appellant.

Douglas M. Greenwald, for Respondent.

Before Division Two: VICTOR C. HOWARD, Presiding Judge, THOMAS H. NEWTON, Judge and GARY D. WITT, Judge.

VICTOR C. HOWARD, Judge.

Angela Bond (Employee) appeals the final award of the Labor and Industrial Relations Commission (Commission) denying her workers' compensation benefits. The Commission found that Employee's injury did not arise out of and in the course of her employment. On appeal, Employee claims that the Commission's final award was not supported by substantial and competent evidence. The final award is affirmed.

## Factual and Procedural Background

On May 17, 2007, Employee was the owner and president of Site Line Survey-

ing (SLS). Employee testified that at approximately 4:30 that afternoon, she was walking through the office taking paperwork to the office manager when she tripped over a telephone cord causing her to fall to the ground. When she fell, she landed on the right side of her body and immediately felt pain in her right wrist and head.

Several people were present at SLS when Employee fell, although no one actually saw her fall. Patty Young (SLS's office manager and Employee's aunt) and Jennifer Renner (Employee's mother) were in the office with Employee, and Warren Bond (Employee's brother) was in the break room at the time of the fall. Ms. Young testified that she was sitting at her desk behind Employee when she heard the phone on her desk "kind of jiggle and hit the floor" and then Employee hit the floor. She turned around and saw Employee laying on her right side moaning. Ms. Young and Ms. Renner, who was sitting at another computer station in the office, went to assist Employee. Employee complained of pain in her right arm and wrist and head. Ms. Renner, who is also a nurse, recommended that Employee go home and put ice on her wrist. Employee took Ms. Renner's advice and left work.

Employee did not go directly home but went to Picture This! Studios, a photography business that Employee often did work for as a subcontractor. Employee testified that she went there to drop off a disk from a wedding and to notify the owner, Angela Needs, that she would not be able to photograph a wedding scheduled for May 19 because of her injured wrist. Ms. Needs testified that she and Employee share a professional relationship but are friendly when they work events together. When asked to identify Employee for the court, Ms. Needs said that she was the "blond bombshell" sitting right there. Ms.

Needs explained that Employee came to her business on the afternoon of May 17, 2007, and informed her that she had fallen at work and would not be able to photograph the May 19 wedding. Ms. Needs testified that Employee's right wrist appeared to be swollen, discolored, and mangled and that Employee was favoring her wrist and was in pain.

Employee testified that after leaving Picture This!, she went home, took some Tylenol, and iced her wrist with a bag of frozen vegetables. At 5:20 pm, Conley Stamper, a consultant for SLS, visited Employee at her home to have her sign some contracts. He testified that when Employee answered her door, she appeared shaken and in pain and was holding a bag of frozen vegetables on her right arm near her wrist. He further stated that he noticed some swelling on her wrist and that she was favoring it. Mr. Stamper was at Employee's house for approximately five minutes. He testified that he previously worked at SLS from 1996 until 2006 and that at one point, he was romantically involved with Employee's mother, Ms. Renner.

Employee did not seek any medical treatment for her wrist on May 17, 2007, hopeful it was only a sprain. She went to bed that night at 9:00 pm. She further stated that during the night, she fell out of her bed when she lost her balance as she was attempting to get up and avoid her three sleeping dogs. She testified that she thought she fell backwards and landed on her bottom. She denied injuring or re-injuring her right wrist when she fell out of bed. She also denied that her fall out of bed was the result of a seizure.

Employee testified that she occasionally has nocturnal seizures that have resulted in a fractured spine, broken toe, and fractured ribs in the past. She explained that she is not aware that she is having a

seizure at the time but that when she wakes up, she discovers that she has bitten her tongue and has blood-shot eyes and flu-like symptoms. Employee testified that she did not have any of these symptoms on the morning of May 18, 2007.

Employee further testified that she had an argument with her fiancé, Scott Paulson, that morning. She and Mr. Paulson lived together but slept in separate bedrooms. According to Employee, Mr. Paulson was not home on the evening of May 17 before she went to bed and that he smelled of alcohol that next morning. She also testified that she told Mr. Paulson about her wrist injury at work the day before and her fall out of bed later that night. She denied telling Mr. Paulson that she had suffered a seizure or that she had hurt her wrist in a fall at home. She testified that her mother took her to the Truman Medical Center emergency room at 10:00 am that morning.

Mr. Paulson testified by deposition, after he and Employee had broken up, that he believed he was home on the evening of May 17 and that Employee never mentioned falling at work that day or that she was having any problem with her wrist. He stated that they went to bed that night, each going to their separate bedrooms, and that early the next morning, Employee came into his room and woke him up. She was very lethargic and holding her wrist. Mr. Paulson testified that based on his experience with Employee's seizures and her behavior, he knew that she had had a seizure. He stated that he got some ice for her wrist, took her back to bed, and lay down with her. Finally, Mr. Paulson testified that he called Employee's doctor's office in the morning and reported that Employee had had another seizure and fell out of bed and that they thought she might have fractured her wrist. He then took Employee to the emergency room.

Employee's medical records reflected that Mr. Paulson called the office of Dr. Carrie Lehr at 9:27 am on May 18. The office notes stated, "fiancée called, pt had sz last night and possibly has fractured wrist." The notes also reflected Dr. Lehr's recommendation that Employee go to the emergency room.

The Truman Medical Center records reflected, "The patient presents with a chief complaint that she fell out of bed last night and hurt her wrist." Employee testified that she did not think she gave that history to the ER doctor. Additionally, an outpatient progress note from the same day reflects, "She apparently sustained this falling out of bed." Employee testified that these notes were inaccurate and that Mr. Paulson was a possible source of the inaccurate information. The hospital records showed that Employee suffered two fractures in her right wrist. The bones were impacted, or driven into each other.

Employee saw Dr. James Brannon at Truman Medical Center about her wrist on May 23. A progress note from that day reflected, "Patient is [sic] slipped and fell on Thursday of the last week." Employee testified that she gave Dr. Brannon this history and that her mother was present and Mr. Paulson was not. Dr. Brannon performed surgery on Employee's wrist on May 25. Employee's follow-up care was shifted to Dr. William Reed. Dr. Reed examined Employee on June 7 and recommended occupational therapy. Dr. Reed noted Employee's history as "This is a 38–year–old female that tripped and fell over a phone cord at work." In an October 2007 letter to SLS's insurance carrier, Dr. Reed documented Employee's loss of motion in her wrist and rated her disability at 10% permanent partial impairment of the upper extremity. Employee was reevalu-

ated by Dr. Reed in May 2008, and Dr. Reed recommended an EMG.

In February 2009, Employee was evaluated by Dr. John Pazell, an orthopaedic surgeon. After reviewing Employee's medical records and performing a physical examination, Dr. Pazell submitted a written medical evaluation recommending an EMG of Employee's right upper extremity and an MRI of her right shoulder. Dr. Pazell opined that the May 17, 2007 slip and fall at work "was the prevailing factor leading to the development of the fracture right radius and the injury to her right shoulder."

Employee testified that she continues to experience numerous physical problems from her work injury including pain in her right hand and wrist, loss of strength in her right wrist, loss of range of motion in her right wrist, numbness and tingling in her right hand, and pain in her right shoulder.

Employee filed a claim for compensation with the Division of Workers' Compensation. In her claim, Employee alleged that the injury occurred when she tripped and fell while moving office furniture. The Division's Administrative Law Judge (ALJ) held a hearing and thereafter issued a final award finding that Employee sustained a compensable work injury within the course and scope of her employment at SLS.

The Commission reversed the award of the ALJ and denied compensation. For several reasons stated in its decision, the Commission found that Employee's "fractured right wrist did not arise out of and in the course of her employment on May 17, 2007. Although employee may have suffered a minor fall at work, we find that the weight of the evidence suggests that her double fracture occurred at her home later

that night or in the early morning of May 18, 2007." This appeal by Employee followed.

## Standard of Review

■■■ In cases where the Commission reverses the decision of the ALJ, the Commission's final award and not the ALJ's decision is reviewed. *Snyder v. Consol. Library Dist. No. 3,* 306 S.W.3d 133, 135–36 (Mo.App. W.D.2010). In reviewing the Commission's award, the appellate court shall review only questions of law. § 287.495.1, RSMo Cum.Supp.2009.[1] It may modify, reverse, remand for rehearing, or set aside the award based on factual determinations only on the grounds prescribed by statute: (1) that the Commission acted without or in excess of its powers; (2) that the award was procured by fraud; (3) that the facts found by the Commission do not support the award; or (4) that there was not sufficient competent evidence in the record to warrant the making of the award. *Id.*; *Dubose v. City of St. Louis,* 210 S.W.3d 391, 394 (Mo.App. E.D.2006). The appellate court reviews the Commission's award to determine whether it is " 'supported by competent and substantial evidence upon the whole record.' " *Dubose,* 210 S.W.3d at 394 (quoting *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003)). It defers to the Commission on issues of fact but reviews questions of law *de novo. Id.* Additionally, the appellate court defers to the Commission on issues concerning the credibility and weight to be given to conflicting evidence. *Id.*

## Analysis

■■■ In her sole point on appeal, Employee contends that the Commission's finding that Employee's injury did not

1. All statutory references are to RSMo Cum. Supp.2009 unless otherwise indicated.

arise out of and in the course of her employment was not supported by substantial and competent evidence.

In 2005, the Missouri General Assembly made sweeping changes to the Workers' Compensation Law, Chapter 287, RSMo. Under the current Law, "[a]n injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability." § 287.020.3(1). "Prevailing factor" is defined as "the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." *Id.* Furthermore, section 287.800.1 now requires this Court to strictly construe the provisions of the Workers' Compensation Law. *Smalley v. Landmark Erectors*, 291 S.W.3d 737, 738 (Mo.App. E.D.2009); *Gordon v. City of Ellisville*, 268 S.W.3d 454, 459 (Mo.App. E.D.2008).

▮▮▮ "The claimant in a worker's compensation case has the burden to prove all essential elements of her claim including a causal connection between the injury and the job." *Royal v. Advantica Rest. Group, Inc.*, 194 S.W.3d 371, 376 (Mo.App. W.D.2006)(internal quotation marks and citations omitted). " 'Medical causation, which is not within common knowledge or experience, must be established by scientific or medical evidence showing the relationship between the complained of condition and the asserted cause.' " *Lingo v. Midwest Block & Brick, Inc.*, 307 S.W.3d 233, 236 (Mo.App. W.D.2010)(quoting *Gordon*, 268 S.W.3d at 461). The weight afforded a medical expert's opinion is exclusively within the discretion of the Commission. *Sartor v. Medicap Pharmacy*, 181 S.W.3d 627, 630 (Mo.App. W.D.2006). Furthermore, where the right to compensation depends on which of two medical theories should be accepted, "the issue is peculiarly for the Commission's determination." *Goerlich v.*

*TPF, Inc.*, 85 S.W.3d 724, 731 (Mo.App. E.D.2002)(internal quotation marks and citation omitted), *overruled on other grounds by Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220 (Mo. banc 2003).

The Commission's finding that Employee's injury did not arise out of and in the course of her employment was supported by competent and substantial evidence upon the whole record. Evidence was presented that Employee suffers from a seizure disorder that has resulted in broken bones in the past. Employee herself testified that she fell out of bed during the night of May 17 or early morning of May 18, 2007, although she denied having a seizure or hurting her wrist at that time. Mr. Paulson testified that Employee did not tell him that she hurt her wrist at work before going to bed that night. He also testified that he had witnessed Employee's prior nocturnal seizures and the symptoms that arose from them. He stated that early the next morning, Employee came into his room and woke him up. She was very lethargic and holding her wrist. Based on his experience with Employee's seizures and her behavior, he knew that she had had a seizure. Mr. Paulson's testimony and the office notes of Dr. Lehr demonstrated that Mr. Paulson called Employee's doctor the next morning and reported that Employee had had a seizure and possibly fractured her wrist. The Truman Medical Center emergency room records reflected that Employee "present[ed] with a chief complaint that she fell out of bed last night and hurt her wrist."

While other evidence was presented through Employee's testimony and the testimony of Ms. Young, Ms. Renner, Ms. Needs, and Mr. Stamper that Employee's injury resulted from a fall at work, the Commission discredited this evidence citing the disparity between Employee's description of the workplace fall in her claim

for compensation (tripped while moving furniture) and at trial (tripped over phone cord), Employee's less than definite denial that she told emergency room workers that she hurt her wrist when she fell out of bed, and Employee's close relationships with the other witnesses. Instead, the Commission found credible and gave more weight to Mr. Paulson's testimony and the emergency room records despite some inaccuracies in the records unrelated to the causation issue. These determinations of credibility and weight to be given to the evidence were for the Commission. *Dubose*, 210 S.W.3d at 394.

 Employee contends that Dr. Pazell's report, in which he opines that Employee's fall at work was the prevailing factor in causing her right wrist fracture, is dispositive of the issue of medical causation because his opinion was the only medical opinion in the case addressing the issue and the Commission was wholly silent with respect to the doctor's opinion and credibility and, therefore, was not free to arbitrarily disregard or ignore the unimpeached and undisputed evidence. In support of this contention, Employee cites *Cardwell v. Treasurer of State of Missouri*, 249 S.W.3d 902 (Mo.App. E.D.2008). "[A]cceptance or rejection of medical evidence is for the Commission and it is free to disbelieve uncontradicted and unimpeached testimony." *Id.* at 907. "If the Commission expressly declared that it disbelieves uncontradicted or unimpeached testimony, or if reference to the award shows that the Commission's disbelief of the employee or his or her doctor was the basis of the award, then the general rule ... applies." *Id.* "The Commission may not arbitrarily disregard and ignore competent, substantial, and undisputed evidence of witnesses who are not shown by the record to have been impeached and the Commission may not base its findings

upon conjecture or its own mere personal opinion unsupported by sufficient and competent evidence." *Id. See also Wright v. Sports Assoc., Inc.,* 887 S.W.2d 596, 600 (Mo. banc 1994), *overruled on other grounds by Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220 (Mo. banc 2003); *Merriman v. Ben Gutman Truck Serv., Inc.,* 392 S.W.2d 292, 297 (Mo.1965). Thus, "where the record is wholly silent concerning the Commission's weighing of credibility, the Commission may not arbitrarily disregard or ignore competent, substantial, and undisputed evidence of witnesses." *Cardwell,* 249 S.W.3d at 907–08.

 Employee's contention fails for several reasons. First, her argument ignores the burden of proof in a workers' compensation case, namely that the claimant has the burden of proving all essential elements of a claim including causation. *Royal,* 194 S.W.3d at 376; *Decker v. Square D Co.,* 974 S.W.2d 667, 670 (Mo. App. W.D.1998). "In cases in which more than one event could have caused a condition but only one is compensable, a claimant has the burden of proving the nature and extent of disability attributable to his or her job duties or workplace." *Decker,* 974 S.W.2d at 670. An employer is not obligated to disprove a claimant's case or, specifically, to establish that another event caused the employee's injury. *Roberts v. Mo. Highway & Transp. Comm'n,* 222 S.W.3d 322, 333 (Mo.App. S.D.2007); *Decker,* 974 S.W.2d at 670. The employer, SLS, was not obligated to establish by medical evidence or otherwise that Employee's injury was caused by a fall from bed during a nocturnal seizure. *See Decker,* 974 S.W.2d at 670 (employer was not obligated to establish that employee's carpal tunnel syndrome was caused by something other than his job). Instead, Employee had the burden to prove a direct causal link between her injury and her job.

*Royal,* 194 S.W.3d at 376; *Decker,* 974 S.W.2d at 670.

Furthermore, Dr. Pazell's report did not constitute undisputed evidence of medical causation, and the Commission's award demonstrates that the Commission gave little or no weight to it. In the section, summary of medical care, in his written evaluation prepared some twenty-one months after Employee suffered her injury, Dr. Pazell wrote:

> I had the opportunity to evaluate her and take her history. Basically, it is as follows.
>
> On May 17, 2007, she was coming down the hall in her office at her place of employment and she tripped. She had on a wedge shoe and tripped apparently over a phone cord. She fell, struck her head, and landed on her outstretched hand. She had immediate discomfort, limited motion, and tenderness in her hand. She was concerned about the fact that it might perhaps be a strain. She went home, applied ice, and subsequently went to Truman Medical Center with a history of wrist pain. There is some conjecture that she fell out of bed and hurt her wrist. This is not accurate. She hurt wrist in the presence of witnesses at her place of employment. Whatever happened that night would only at best aggravate the issue.

At the end of his evaluation, Dr. Pazell opined that the May 17, 2007 slip and fall at work "was the prevailing factor leading to the development of the fracture right radius and the injury to her right shoulder."

The parties did not dispute that a fall caused Employee's injury. Employee presented evidence that a fall at work caused her injury while SLS presented evidence that Employee's injury was caused by a fall as a result of a nocturnal seizure. Dr. Pazell's opinion that Employee's fall at work caused her injury seemingly was not based on medical judgment but rather the history provided to him by Employee and the doctor's own determination of the witnesses' credibility. Moreover, Dr. Pazell did not evaluate the other possible cause of Employee's injury—a nocturnal seizure—but summarily dismissed the "conjecture" as inaccurate. While the doctor apparently reviewed Employee's medical records, which contained information regarding her seizure disorder, his report did not indicate that he was even aware of the specific circumstances of the other possible cause. Such limitations of Dr. Pazell's opinion went to the weight afforded to the opinion, which was exclusively within the province of the Commission. *See McBurney v. Cameron,* 248 S.W.3d 36, 49 (Mo.App. W.D.2008)(in medical malpractice case, where expert did not opine regarding one of two possible causes, such limitations of his expertise went to the weight of his opinion, which was for the finder of fact to determine). Reference to the award shows that the Commission did not believe the doctor's opinion that a fall at work was the prevailing factor in causing Employee's wrist injury. The Commission explicitly discredited Employee and her witnesses, who offered similar evidence and who the doctor relied upon. Additionally, it specifically credited the emergency room records and Mr. Paulson's testimony showing a different cause of the injury. Thus, the record was not wholly silent on the issue of credibility, and the Commission did not base its findings on mere personal opinion unsupported by sufficient and competent evidence. The Commission was, therefore, free to disregard Dr. Pazell's report. *See Cardwell,* 249 S.W.3d at 907. *But see Angus v. Second Injury Fund,* —— S.W.3d ——, —— (Mo.App. W.D.2010)(the Com-

mission erred in disregarding the sole, uncontradicted expert medical opinion and instead adopting its own personal opinion as to causation where the Commission found claimant to be credible, the causation issue was a complex medical issue, and all of the medical evidence presented supported the doctor's causation opinion). The point is denied.

The final award of the Commission is affirmed.

All concur.