Daphne PENNEWELL,
Claimant/Respondent,

v.

HANNIBAL REGIONAL HOSPITAL,
Employer/Appellant.

No. ED 98706.

Missouri Court of Appeals,
Eastern District,
Northern Division.

Jan. 29, 2013.

tion claims." *Graves v. State,* 372 S.W.3d 546, 548 (Mo.App. W.D.2012).

Robert J. Bassett, Lisa A. Larkin, St. Louis, MO, for appellant.

John B. Morthland, Hannibal, MO, for respondent.

ROBERT M. CLAYTON III, Judge.

Hannibal Regional Hospital ("Hannibal Regional") appeals the decision of the Labor and Industrial Relations Commission ("Commission") affirming the award and decision of the Administrative Law Judge ("ALJ") awarding disability benefits to Daphne Pennewell. We affirm.

## I. BACKGROUND

Pennewell began working for Hannibal Regional in January 1994 as a staff physical therapist. At the time of her accident, she was working three ten-hour shifts per week, doing both administrative work and hands-on physical therapy. She has a bachelor of health sciences degree and a master's degree in physical therapy.

On July 14, 2006, while leading a sports enhancement program for Hannibal Regional, she injured her back. She was treated that day with pain medication, muscle relaxants, and a steroid. About two weeks later, she began to notice radiating pain and symptoms into her right leg. An MRI revealed a central disc protrusion and L5–S1 encroaching on the SI nerve root. Hannibal Regional referred Pennewell to Dr. Dennis Abernathie, an orthopedic surgeon. In the next six months, Pennewell underwent three surgeries, including an L5–S1 anterior lumbar interbody fusion, and numerous other treatments. Between her second and third surgeries and again after her third surgery, she returned to limited work and duties at Hannibal Regional. She worked only a portion of three days, and had restrictions on lifting and other activities. In September 2007, she re-aggravated her back injury while at work, causing a renewal of pain and her prior symptoms.

In December 2007, Pennewell saw Dr. David Kennedy, a neurosurgeon. His tests revealed permanent nerve damage as well as "severe" complications from her earlier surgeries. He referred Pennewell to Dr. Barry Feinberg for pain management. Both doctors agreed Pennewell needed the implantation of a spinal cord stimulator to manage her pain. Dr. Kennedy performed the implant in July 2008. This procedure reduced the pain in her legs by 75% but did not reduce her back pain.

Pennewell returned to work in early 2009, working six to eight hours a day, three days a week. Initially in August 2009, Dr. Feinberg declared Pennewell to be permanently partially disabled and approaching maximum medical improvement, in that there was nothing more to be done medically but to continue pain management. However, Pennewell continued to report substantial and worsening pain. She reported muscle spasms, trouble concentrating, and fatigue, and she stated that she had been forced to give up activities with her family at home in order to recover from the days she worked. While at work, she would lie down to rest her back when she was able, including for the duration of her lunch break. During this time, Pennewell continued to undergo physical therapy and was taking Vicodin for pain management, in addition to the spinal cord stimulator.

In October 2009, Dr. Feinberg increased her medication, prescribing Duragesic, a schedule 2 narcotic drug equivalent to Morphine, which Pennewell was still taking at the time of the hearing. Dr. Feinberg noted that as Pennewell continued to work, she became tolerant to her pain medication, moving from Vicodin to Percocet to Duragesic. At this time, Dr. Kennedy and Dr. Feinberg determined Pennewell could perform no work of any kind due to her pain. Accordingly, Pennewell stopped working.

In November 2009, Dr. Russell Cantrell performed an independent medical examination of Pennewell and determined she was physically fit to perform the work of a physical therapist for three eight-hour shifts a week. He declared her to be at maximum medical improvement and that she required no further medical treatment. Further, he opined Pennewell's condition would be improved by increased activity. Consequently, in December, Hannibal Regional offered Pennewell employment with the same restrictions as earlier that year. Pennewell declined.

Hannibal Regional retained a vocational counselor, June Blaine, to analyze Pennewell's employability. Blaine recommended that if Pennewell was able to take rest breaks during the day and lie down to ease her discomfort, she could work and was employable in a part-time status. Blaine acknowledged that her recommendation was based on Dr. Cantrell's opinion that Pennewell could work. Based on this report, Hannibal Regional again offered Pennewell employment for four or five days a week for 4–5 hours a day. Pennewell declined.

Pennewell filed a claim for compensation, which was heard by the ALJ. Hannibal Regional stipulated that the injury occurred in the course and scope of her employment, but challenged the nature and extent of the resulting disability and its liability for future medical care. The ALJ awarded benefits, finding Pennewell was rendered permanently and totally disabled by her injury. The award included permanent and total disability benefits and compensation for future medical treatment. Hannibal Regional appealed the decision, and the Commission unanimously affirmed and adopted the findings of the ALJ. This appeal follows.

## II. DISCUSSION

### A. Standard of Review

■ In reviewing the decision of the Commission we review only questions of law. Section 287.495.1 RSMo (2000). We may modify, reverse, remand for rehearing, or set aside an award of the Commission only where the Commission acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support

the award, or there was not sufficient competent evidence in the record to support the award. *Id.* Where the Commission affirms the award of the ALJ, as it did in the present case, we review the ALJ's award and decision as incorporated and affirmed by the Commission. *Casteel v. Gen. Council of Assemblies of God,* 257 S.W.3d 160, 162 (Mo.App. S.D.2008).

■■■ We must consider whether there was sufficient competent and substantial evidence to support the award in the context of the record as a whole. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003); *Bond v. Site Line Surveying,* 322 S.W.3d 165, 169 (Mo.App. W.D.2010). We defer to the Commission regarding factual issues. *Bond,* 322 S.W.3d at 169. We also defer to the Commission on issues involving the credibility of witnesses and weight to be given to conflicting evidence. *Id.* Thus, this Court is bound by the Commission's factual determination if the evidence supports either of two opposing findings.

## B. Section 287.800 RSMo (Cum.Supp. 2005)[1]

In its first point on appeal Hannibal Regional argues the Commission erred in finding Pennewell permanently and totally disabled, because the ALJ applied the incorrect legal standard. Specifically, it contends the ALJ failed to strictly construe the language of the statute and failed to weigh the evidence equally, rather than giving the benefit of the doubt to the claimant. We disagree.

In 2005, the Legislature substantially revised the Worker's Compensation Act ("the Act"). Under the amended Act, Section 287.800.1 provides that reviewing courts shall construe the provisions of the Act strictly, meaning that the statute can

be given no broader an application than is warranted by its plain and unambiguous terms. Section 287.800.1; *State ex rel. KCP & L of Greater Mo. Operations Co. v. Cook,* 353 S.W.3d 14, 20 (Mo.App. W.D. 2011). This strict application applies to definitions included within the Act. *See Robinson v. Hooker,* 323 S.W.3d 418, 424 (Mo.App. W.D.2010).

■■■ Hannibal Regional first argues the ALJ failed to strictly construe the Act's definition of total disability. Total disability is defined as the "inability to return to any employment and not merely the inability to return to the employment in which the employee was engaged at the time of the accident." Section 287.020.6 RSMo (Cum.Supp.2008). This definition remained unaltered in the 2005 amendment. Here, the ALJ weighed the evidence and determined Pennewell was totally disabled, stating:

> Despite her young age and extensive education, it is clear from the evidence that Claimant, physically, cannot return to any employment. An employer simply cannot reasonably expect Claimant to successfully perform work in her physical condition. Employer, in its brief, argues that Claimant has simply decided to quit working and is content to collect disability benefits despite being able to work. This was not my impression of Claimant at the hearing. . . . Therefore, while it gives me no pleasure to consign Claimant to the ranks of the permanently disabled, that is the only reasonable conclusion I can draw from the evidence.

The conclusion that Pennewell was totally disabled because she was unable to return to any work for any employer due to her physical condition comports with the plain language of the statute. The Commission

---

1. Further statutory references are to RSMo (Cum.Supp.2005), unless otherwise noted.

strictly applied the statute as it was required to, and did not exceed its authority.

Hannibal Regional next argues the ALJ failed to weigh the evidence equally and impartially. To the extent this argument challenges whether there was competent and substantial evidence supporting the award of disability benefits, we address that issue in Point Two. Before 2005, the Act provided that the ALJ and Commission were to give the benefit of the doubt to the claimant. However, the 2005 revisions to the Act instruct that the ALJ and Commission shall weigh the evidence impartially without giving the benefit of the doubt to any party when weighing evidence and resolving factual conflicts. Section 287.800.2.

We first note that the practice of giving a claimant the benefit of the doubt assumes the existence of doubt. Thus, the benefit need only be applied in cases where there was an absence of evidence, internally inconsistent evidence, or some other cause for doubt. Where, however, there is sufficient evidence supporting both parties, giving the benefit of the doubt is not the issue. Rather, when faced with conflicting evidence, the Commission is tasked with weighing the evidence and making determinations as to the credibility of the various witnesses. *See Jordan v. USF Holland Motor Freight, Inc.,* 383 S.W.3d 93, 94 (Mo.App. S.D.2012). This court defers to those determinations and is bound by the Commission decision "as to which of the various medical experts to believe." *Id.* (citation omitted); *Bond,* 322 S.W.3d at 169.

Here, there is nothing in the record to suggest the Commission improperly gave Pennewell the benefit of any doubts. The Commission did not state it was giving her this benefit; rather, it merely weighed conflicting evidence, as is its responsibility, and ruled in her favor. The record does not demonstrate a lack of evidence that would lead this Court to believe the Commission had improperly given Pennewell any benefit of the doubt. Rather, Pennewell presented deposition testimony from two treating physicians, and Hannibal Regional presented deposition testimony from one examining physician and a vocational counselor. We do not equate parsing conflicting evidence with giving a party the benefit of the doubt. The Commission weighed the conflicting evidence and determined "the only reasonable conclusion" from the evidence was that Pennewell was permanently and totally disabled.

It does not appear from the record in full that the Commission used the incorrect legal standard under Section 287.800; rather, the Commission strictly construed the language of the statute and impartially weighed the evidence, not giving the benefit of the doubt to either party.

Point one on appeal is denied.

## C. Permanent and Total Disability

In its second point on appeal, Hannibal Regional argues the Commission erred in finding Pennewell permanently and totally disabled because the ALJ's award was not supported by competent and substantial evidence. Specifically, the ALJ disregarded Hannibal Regional's evidence that Pennewell was employable and could perform work, and erroneously relied on evidence provided by Dr. Kennedy and Dr. Feinberg. We disagree.

Again, Section 287.020.6 defines "total disability" as the "inability to return to any employment and not merely [the] inability to return to the employment in which the employee was engaged at the time of the accident." An employee is permanently and totally disabled if no employer in the usual course of business would reasonably be expected to employ

the employee in his or her present physical condition. *Clark v. Harts Auto Repair*, 274 S.W.3d 612, 616 (Mo.App. W.D.2009). It is the claimant's burden to establish permanent total disability through evidence proving his or her claim. *Id.*

Here, there was sufficient competent evidence to support the Commission's determination that Pennewell was rendered permanently and totally disabled by her July 14 injury to her back. Dr. Kennedy testified Pennewell was not able to do any kind of employment whatsoever, due to the pain she experienced with most types of activity, loss of mobility and flexibility, difficulty concentrating, and fatigue. Even though she had a master's degree and would normally be highly employable, he testified "the pain issues really overrode those considerations." He characterized Dr. Cantrell's opinion as not "realistic," considering Pennewell's significant ongoing nerve dysfunction and chronic pain, which affected her ability to function on a regular basis.

Similarly, Dr. Feinberg testified to the following. It was his opinion that Pennewell could not work at all. He prescribed a Schedule II narcotic in October 2009 in order for her function. While working, her tolerance to pain medication had increased, and Dr. Feinberg opined that if Pennewell continued to work, her tolerance would continue to increase, creating a growing problem. Moreover, the increased pain medication would affect her ability to concentrate. Pennewell entered into evidence Dr. Feinberg's Progress Note dated October 26, 2009, in which he stated:

> At this point, I do not believe that [Pennewell] may be able to continue with working. I do not believe that this is a good trade off to be increasing [Pennewell's] narcotic medications just to allow her to be able to work.... I do not

believe that [Pennewell] is now capable of performing her daily activities even at 24 hours per week. [Pennewell] states that her activities with the family are suffering. [Pennewell] states that she is not able to take care of her children. She is constantly lying down and missing activities associated with her family. Therefore, I have asked [Pennewell] to stop working.

Pennewell testified that between August and October 2009, she started having increasing pain and getting muscle spasms, and the pain medication she had been taking was no longer effective. She worked on Monday, Wednesday, and Friday, and would spend Tuesday and Thursday in bed recovering. She was very fatigued, could not concentrate, and was not available for her family. She testified she had not pursued any educational or occupational opportunities since stopping work in October 2009.

By contrast, Hannibal Regional presented deposition testimony from Dr. Cantrell that Pennewell was physically fit to perform the work of a physical therapist for three eight-hour shifts a week, and that she required no further medical treatment. Hannibal Regional presented a Vocational Rehabilitation Assessment, which recommended Pennewell would be employable on a part-time basis if she were able to take rest breaks during the day and lie down to ease her discomfort. The Assessment based on the opinion of Dr. Cantrell, and previously, considering only the opinions of Dr. Kennedy and Dr. Feinberg, it did not recommend Pennewell return to work.

█ Hannibal Regional's argument the Commission committed error by crediting Pennewell's evidence over its evidence is without merit. Here, there was conflicting testimony presented as to whether Pennewell was able to work on a part-time basis.

If the Commission's decision to accept one of two conflicting medical opinions is supported by competent and substantial evidence in the record, we will uphold that decision. *Casteel*, 257 S.W.3d at 163; *see also Baxi v. United Technologies Automotive*, 956 S.W.2d 340, 343 (Mo.App. E.D. 1997) (whether employee is partially or totally disabled is finding of fact within province of Commission, and appellate court will not disturb finding even if court would have reached different conclusion).

The Commission clearly placed greater weight on Dr. Kennedy's and Dr. Feinberg's opinions by awarding Pennewell benefits for a permanent and total disability, and this finding was supported by competent and substantial evidence in the record. This court will not reweigh the evidence, but will defer to the Commission findings on issues of the weight and credibility to be given medical testimony. *Clark*, 274 S.W.3d at 617.

Point two on appeal is denied.

### D. Future Medical Treatment

In its third point on appeal, Hannibal Regional argues the Commission's award for future medical treatment was not supported by competent and substantial evidence. According to Hannibal Regional, the evidence showed that Pennewell was at maximum medical improvement in August and November 2009. We disagree.

Pursuant to Section 287.140.1, an employer is required to provide care "as may be reasonably required to cure and relieve from the effects of the injury." This includes allowance for the cost of future medical treatment. *Poole v. City of St. Louis*, 328 S.W.3d 277, 290–91 (Mo. App. E.D.2010). An award of future medical treatment is appropriate if an employee shows a reasonable probability that he or she is in need of additional medical treatment for the work-related injury. *Id.* at 292. "Future care to relieve [an employee's] pain should not be denied simply because he may have achieved [maximum medical improvement]." *Id.* Therefore, a finding that an employee has reached maximum medical improvement is not necessarily inconsistent with the employee's need for future medical treatment. *Id.*

Hannibal Regional relies upon Dr. Feinberg's statement in August 2009 that Pennewell was approaching maximum medical improvement and Dr. Cantrell opinion in November 2009 that Pennewell was at maximum medical improvement to argue the Commission's decision awarding future medical care was not supported by competent and substantial evidence. However, Dr. Cantrell's finding that Pennewell was at maximum medical improvement does not in itself foreclose an award for future medical treatment. *Id.*

Rather, the evidence here showed a reasonable probability that Pennewell will require additional medical treatment for her back injury, justifying an award of future medical treatment. *Lawson v. Ford Motor Co.*, 217 S.W.3d 345, 351 (Mo.App. E.D. 2007). Pennewell continues to use the spinal cord stimulator for her pain, and Dr. Feinberg testified that the generator will have to be replaced once every one to ten years. At the time of the hearing, she was taking Duragesic in the form of fentanyl patches, requiring a new patch every 48 hours, and she, Dr. Kennedy and Dr. Feinberg each testified about her continuing pain and continuing need for pain medication. In light of this evidence, the Commission's decision to award compensation for future medical treatment was supported by substantial and competent evidence.

Point three on appeal is denied.

## III. CONCLUSION

As a result of the foregoing, we find the Commission's decision was supported by competent and substantial evidence in the record before us. Therefore, the Commission did not err in affirming the ALJ's decision and in awarding Pennewell permanent and total disability benefits, and future medical treatment.

The decision of the Commission is affirmed.

GLENN A. NORTON and ROY L. RICHTER, JJ., concur.