v.

SONIC DRIVE IN OF HIGH RIDGE,
Appellant/Cross–Respondent.

No. ED 98507.

Missouri Court of Appeals,
Eastern District,
Division One.

Dec. 18, 2012.

Stephen A. McManus, Saint Louis, MO, for Appellant/Cross–Respondent.

Mark A. Cantor, Saint Louis, MO, for Respondent/Cross–Appellant.

## OPINION

GLENN A. NORTON, Judge.

Sonic Drive In of High Ridge ("Employer") appeals the portion of the decision of the Labor and Industrial Relations Commission affirming and adopting the Administrative Law Judge's (the "ALJ") award of permanent partial disability benefits to T.H. ("Claimant") for psychiatric injuries she suffered as a result of being sexually assaulted at work. Claimant cross-appeals the portion of the Commission's decision modifying the ALJ's award with respect to the applicable rate of compensation. The Commission found the applicable rate of compensation for the award was $40.00 per week. We affirm in part and reverse and remand in part.

## I. BACKGROUND

Claimant began working for Employer in August 2006, when she was twenty-two years old. On November 17, 2008, Claimant filed a worker's compensation claim against Employer, which the Division of Worker's Compensation acknowledged on November 24, 2008. The claim alleged that Claimant suffered injuries to her body as a whole and psychiatric injury on November 15, 2006, during the course and scope of her employment "when she was assaulted and raped in the men's restaurant bathroom by a co-worker."[1] In the section of the claim form titled "average weekly wage," Claimant alleged. "max rate." Employer filed its answer on March 31, 2009, which was received and date stamped by the Division on April 2, 2009. It is undisputed that Employer's answer was untimely pursuant to 8 CSR 50–2.010(8) (effective Feb. 28, 1999)[2] because it was not filed within thirty days from the date of the Division's acknowledgement of Claimant's claim for compensation.

### A. Relevant Testimony and Evidence

At a hearing before the ALJ, Claimant testified to the following. On November 15, 2006, Claimant arrived at work at approximately 9:00 a.m. At about 9:30 a.m., Claimant was approached by her co-worker, Jeremy Schrum, who said he wanted to speak with her in the back of the store. Claimant agreed, and as she and Schrum were walking towards the back of the store, Schrum shoved Claimant into the men's bathroom, locked the door, and forced her to have sex with him.[3] Schrum then said to Claimant, "if you tell anyone you're going to regret it." Claimant felt threatened by Schrum's statement, and she left work before the end of her shift because she was too upset to continue work.

The next day, on November 16, Claimant told her mother about the incident.

---

1. Claimant's claim was filed within the applicable statute of limitations. When, as in this case, an employer does not file a report of injury, an employee may file a worker's compensation claim within three years of the date of injury. Section 287.430 RSMo 2000.

2. All further references to CSR (the Code of State Regulations) are to 8 CSR 50–2.010 (effective Feb. 28, 1999).

3. For purposes of this opinion, we will refer to facts related to this portion of Claimant's testimony as "the incident" or "the November 15, 2006 incident," unless we are making a legal conclusion or referring to a characterization made by the ALJ or another party.

Claimant told her general manager about the incident on November 17 and requested medical care from Employer, but she was told by her general manager that "there was no doctor." About two weeks later, Claimant reported the incident to the police and sought medical treatment on her own at St. John's Mercy Hospital. She was then treated by Jones Counseling and Dr. Pilaipun Williams.

Claimant quit her job with Employer in December 2006 because of anxiety she experienced when she was at work, including having a fear of men and being sexually assaulted again. She subsequently worked at a few other places of employment but quit because she had to work with and around men. Since the incident, Claimant frequently cries and has headaches, and she has suffered from anxiety, stress, panic attacks, and depression. At the time of the hearing, Claimant could not remember what her earnings were at the time of the incident.

At the hearing, Claimant offered into evidence the deposition of Claimant's alleged assailant, Jeremy Schrum. Claimant also offered into evidence Schrum's certified criminal record which demonstrated he was previously convicted, following guilty pleas, of two counts of first-degree statutory sodomy, two counts of first-degree child molestation, and one count of first-degree statutory rape. Employer objected to the admission of both documents. The ALJ excluded Schrum's deposition but admitted his criminal record.

Claimant also offered into evidence her medical records from St. John's Mercy Hospital, Jones Counseling, and the office of Dr. Williams. Claimant's medical expert, Dr. Paul Packman, testified that based upon his examination of Claimant and a review of her medical records, he opined within a reasonable degree of medical certainty that the November 15, 2006 incident caused Claimant chronic post-traumatic stress disorder with panic attacks and chronic major depressive disorder. Dr. Packman further opined that Claimant suffered a permanent psychiatric partial disability of 65% of the person as a whole as a result of the incident.

Employer's medical expert, Dr. Melissa Harbit, testified that based upon her examination of Claimant and a review of Claimant's medical records, she opined within a reasonable degree of medical certainty that Claimant's psychiatric condition was caused by her pre-existing borderline personality disorder rather than the November 15, 2006 incident. Dr. Harbit also opined that Claimant did not have any type of permanent partial disability related to the incident.

## B. The ALJ's Award and the Commission's Decision

Following the hearing, the ALJ issued a decision awarding Claimant permanent partial disability benefits, finding that "[Claimant] sustained a permanent partial disability of 45% of the body as a whole (180 weeks) for her post-traumatic stress disorder and depressive disorder caused by the rape that occurred at work on November 15, 2006." In the award, the ALJ made credibility and factual findings: (1) "[Claimant] was a credible witness on the issue of accident. I further find that [Claimant] was raped at work"; and (2) "Dr. Packman's opinions on the issue[ ] of medical causation ... are more credible than Dr. Harbit's opinions." Based upon those findings, the ALJ concluded that "the sexual assault that occurred on November 15, 2006 was the prevailing factor in causing [Claimant's] post-traumatic stress disorder and major depression."

The ALJ's award provided that Claimant was entitled to a rate of compensation

of $376.55 per week, which was the maximum rate of compensation for permanent partial disability benefits Claimant could recover pursuant to section 287.190.5(5) RSMo Supp.2006.[4] The ALJ found that Claimant was entitled to that rate because Employer filed an untimely answer to Claimant's claim for compensation and therefore admitted all factual allegations set forth in the claim,[5] including Claimant's allegation that her average weekly wage was "max rate."

Employer filed an application for review. The Commission affirmed and adopted the ALJ's award of permanent partial disability benefits to Claimant. However, the Commission modified the ALJ's award with respect to the applicable rate of compensation. The Commission found that Claimant's allegation in her worker's compensation claim that she had an average weekly wage of "max rate" was not a factual allegation but a legal conclusion which Employer did not admit to by filing an untimely answer. The Commission also found that because Claimant failed to meet her burden of proving her average weekly wage, the applicable rate of compensation for the award was the minimum rate of $40.00 per week.[6] Employer appeals and Claimant cross-appeals.

## II. DISCUSSION

### A. General Standard of Review

Pursuant to section 287.495.1 RSMo 2000, our Court shall only review questions of law. Additionally, we may modify, reverse, remand for rehearing, or set aside

an award of the Commission only where the Commission acted without or in excess of its powers, the award was procured by fraud, the facts found by the Commission do not support the award, or there was not sufficient competent evidence in the record to support the award. *Id.* We must examine the record as a whole to determine whether there was sufficient competent and substantial evidence to support the award. *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 222–23 (Mo. banc 2003). Furthermore, our Court must strictly construe the statutory provisions of Chapter 287, i.e. the Workers' Compensation Law. Section 287.800.1 RSMo Supp. 2006 [7]; section 287.010 RSMo 2000.

### B. Employer's Appeal

■ Employer presents two points on appeal. In both points, Employer asserts that the Commission erred in affirming and adopting the ALJ's award of permanent partial disability benefits to Claimant for psychiatric injuries she suffered as a result of the November 15, 2006 incident. Where the Commission affirms and adopts the award of the ALJ, we review the ALJ's decision and findings as adopted by the Commission. *Poole v. City of St. Louis,* 328 S.W.3d 277, 288 (Mo.App. E.D. 2010).

### 1. Whether there was Sufficient Competent Evidence to Support the Award

In its first point on appeal, Employer claims there was not sufficient competent

---

4. An explanation of how this maximum rate of compensation is calculated is set forth in Section II.C of this opinion.

5. When an employer's answer to a claim for compensation is untimely filed, "the statements of fact in the [c]laim for [c]ompensation shall be deemed admitted for any further proceedings." 8 CSR 50–2.010(8)(B).

6. An explanation of how the Commission arrived at this minimum rate of compensation is set forth in Section II.C of this opinion.

7. Unless otherwise indicated, all further statutory references are to RSMo Supp.2006.

evidence to support the award of permanent partial disability benefits to Claimant. We disagree.

### a. Standard of Review and General Law

■ We defer to the Commission regarding factual issues. *Bond v. Site Line Surveying*, 322 S.W.3d 165, 169 (Mo.App. W.D.2010). We also defer to the Commission on issues involving the credibility of witnesses and weight to be given to conflicting evidence. *Id.* Accordingly, our Court is bound by the Commission's factual determination if the evidence supports either of two opposing findings. *Reynolds–Byers v. Blue Cross and Blue Shield of Missouri*, 290 S.W.3d 781, 783 (Mo.App. S.D.2009) (internal quotation omitted).

■ A claimant in a worker's compensation proceeding has the burden of proving all essential elements of her claim. *Bond*, 322 S.W.3d at 170 (internal quotation omitted). In order for a claimant to recover worker's compensation benefits from her employer, she must prove that: (1) she suffered an injury as a result of an accident arising out of and in the course of her employment; and (2) "the accident was the prevailing factor in causing both the resulting medical condition and disability." Section 287.120.1; section 287.020.3(1). The term "accident" is defined in relevant part as "an unexpected traumatic event ... identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift." Section 287.020.2. Additionally, the definition of "accident" includes "injury ... of the employee caused by the unprovoked violence or assault against the employee by any person." Section 287.120.1. "The prevailing factor" is defined as "the primary factor, in relation to any other factor, causing both the result-

ing medical condition and disability." Section 287.020.3(1). Medical causation, which is not within common knowledge or experience, is required to be established by scientific or medical evidence demonstrating the relationship between the complained of medical condition and the asserted cause of the condition. *Bond*, 322 S.W.3d at 170 (internal quotation omitted).

In this case, Employer asserts Claimant did not meet her burden of proving that she suffered an accident, that she was injured as a result, or that there was medical causation demonstrating the relationship between her psychiatric condition and the November 15, 2006 incident.

### b. Accident and Injury

■ At the hearing before the ALJ, Claimant testified that while she was at work on November 15, 2006, at approximately 9:30 a.m., she was approached by her co-worker, Schrum, who said he wanted to speak with her in the back of the store. Claimant further testified that she agreed to talk to Schrum, and as she and Schrum were walking towards the back of the store, Schrum shoved Claimant into the men's bathroom, locked the door, and forced her to have sex with him. Employer attempts to discredit Claimant's testimony and asserts that Claimant's sexual encounter with Schrum was consensual because there was evidence that Claimant invited Schrum to watch a movie prior to the sexual encounter, that Claimant did not immediately seek medical treatment, and that Claimant did not immediately report the sexual assault to the police and/or Employer. However, the Commission explicitly found that "[Claimant] was a credible witness on the issue of accident. [We] further find that [Claimant] was raped at work." Pursuant to our standard of review, we must defer to the Commission's

credibility and factual determinations. *Id.* at 169.

Furthermore, Claimant testified at the hearing that since the incident, she has had a fear of men and being sexually assaulted again, and she has suffered from anxiety, stress, panic attacks, and depression. Claimant also testified that she cries two to four times a day and has headaches three to four times a week. In addition, Claimant's medical records demonstrate that she underwent counseling following the incident and she was prescribed Xanax for her anxiety and symptoms of post-traumatic stress disorder. Moreover, Dr. Packman opined that Claimant had symptoms of depression "develop right after the assault," including frequent crying, decreased concentration, increased irritability, decreased appetite, and weight loss.

■ Based on the above evidence, there was sufficient competent evidence that the November 15, 2006 incident was an unexpected traumatic event and unprovoked assault which produced objective symptoms of an injury. *See* section 287.020.2 (defining accident in relevant part as "an unexpected traumatic event . . . identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift"); section 287.120.1 (stating that the definition of "accident" includes "injury . . . of the employee caused by the unprovoked violence or assault against the employee by any person"). Therefore, there was sufficient competent evidence in the record that Claimant suffered an injury as a result of an accident arising out of and in the course of her employment.[8]

### c. Medical Causation

■ There was also sufficient competent evidence in the record of medical causation demonstrating the relationship between Claimant's psychiatric condition and the incident. Claimant's medical expert, Dr. Packman, testified that based upon his examination of Claimant and a review of her medical records, he opined within a reasonable degree of medical certainty that the November 15, 2006 incident caused Claimant chronic post-traumatic stress disorder with panic attacks and chronic major depressive disorder. Dr. Packman further opined that Claimant suffered a permanent psychiatric partial disability of 65% of the person as a whole as a result of the incident. Dr. Packman based that rating upon the severity of Claimant's symptoms and their chronic nature, Claimant's failed attempts to re-enter the open labor market, and Claimant's inability to form social interactions with others. Additionally, Dr. Packman found that Claimant did not have a borderline personality disorder.

■ Employer asserts that Dr. Packman was not a credible witness on the issue of medical causation. Employer further asserts that the Commission should have instead relied upon the testimony of Employer's medical expert, Dr. Harbit, who attributed Claimant's psychiatric condition to her pre-existing borderline personality disorder and opined that Claimant

8. We note that Employer argues Claimant has failed to meet her burden of demonstrating she suffered an accident because there is no evidence that Claimant suffered physical symptoms such as "bruising, swelling, [or] lacerations." We find that Employer's argument lacks merit because the definition of accident is not limited to an event which produces physical symptoms. *See* section 287.020.2 (defining accident in relevant part as "an unexpected traumatic event . . . producing at the time objective symptoms of an injury caused by a specific event. . . ."); *see also* sections 287.120.8 and 287.120.9 (indicating that a mental injury may be compensable).

did not have any type of permanent partial disability related to the incident. However, the ALJ explicitly found that "Dr. Packman's opinions on the issue[ ] of medical causation ... are more credible than Dr. Harbit's opinions." Pursuant to our standard of review, we defer to the Commission on issues involving the credibility of witnesses. *Bond,* 322 S.W.3d at 169. Moreover, the weight to be given to a medical expert's opinion "is exclusively within the discretion of the Commission," and "where the right to compensation depends on which of two medical theories should be accepted, the issue is peculiarly for the Commission's determination." *Id.* at 170 (internal quotation omitted). In light of our standard of review, Dr. Packman's testimony constituted sufficient competent evidence regarding medical causation, and his testimony, along with Claimant's, supported the Commission's finding that "the sexual assault that occurred on November 15, 2006 was the prevailing factor in causing [Claimant's] post-traumatic stress disorder and major depression."

### d. Conclusion

There was sufficient competent evidence to support the award of permanent partial disability benefits to Claimant. Point one on appeal is denied.

### 2. Admission of Claimant's Assailant's Criminal Record

■ In its second and final point on appeal, Employer asserts that the Commission erred in admitting Schrum's certified criminal record into evidence which demonstrated he was previously convicted of multiple sexual offenses. Employer contends it was prejudiced by the admission of Schrum's criminal record because it was offered as substantive evidence that he raped Claimant. We disagree.

■ The Commission's ruling on the admission of evidence is reviewed for an abuse of discretion. *Casteel v. General Council of Assemblies of God,* 257 S.W.3d 160, 162 (Mo.App. S.D.2008). An abuse of discretion occurs when the ruling "is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration." *Mitchell v. Kardesch,* 313 S.W.3d 667, 674–75 (Mo. banc 2010) (internal quotation omitted). An evidentiary ruling will only be disturbed if the appellant demonstrates an abuse of discretion and resulting prejudice. *Blackwell v. Simmons,* 202 S.W.3d 715, 717 (Mo.App. E.D.2006).

Employer argues that the Commission erred in admitting Schrum's criminal record pursuant to section 491.050 RSMo 2000, which provides that "[a]ny person who has been convicted of a crime is, notwithstanding, a competent witness; however, any prior criminal convictions may be proved to affect his credibility in a civil or criminal case...." Employer contends that section 491.050 only permits a limited inquiry into a witness's prior convictions for the purpose of impeachment, and because Schrum's deposition was not admitted into evidence and he was not called as a witness, his prior convictions could not have been introduced to impeach his credibility.

Even assuming *arguendo* that the Commission erred in admitting Schrum's criminal record, Employer has not demonstrated that it was prejudiced as a result of its admission. As previously stated, the Commission explicitly found that "[Claimant] was a credible witness on the issue of accident. [We] further find that [Claimant] was raped at work." It is clear from the Commission's credibility and factual determinations, to which we must defer, that Claimant's testimony, rather than Schrum's criminal record, was determina-

tive on the issue of whether Claimant was raped. Because the admission of Schrum's criminal record was not outcome-determinative on the issue of whether Claimant was raped or on any other issue, Employer has not demonstrated it was prejudiced by its admission. *See K.B.C. v. Juvenile Officer*, 273 S.W.3d 76, 78 (Mo.App. W.D.2008) (finding that "[a]n improper admission of evidence is prejudicial if it is outcome-determinative"). Point two on appeal is denied.

## C. Claimant's Cross–Appeal

· In Claimant's sole point on cross-appeal, she asserts that the Commission erred in finding that the applicable rate of compensation for the award of permanent partial disability benefits was $40.00 per week. Because the Commission found differently than the ALJ on this issue, with respect to this point we review the Commission's findings rather than those of the ALJ. *Birdsong v. Waste Management*, 147 S.W.3d 132, 136–37 (Mo.App. S.D.2004).

### 1. General Law and Issue on Appeal

 When, as in this case, an employer's answer to a claim for compensation is untimely filed, "the statements of fact in the [c]laim for [c]ompensation shall be deemed admitted for any further proceedings." 8 CSR 50–2.010(8)(B). In other words, an employer's untimely answer results in the admission of factual allegations in a claimant's claim for compensation. *Anderson v. Veracity Research Co.*, 299 S.W.3d 720, 726, 728 (Mo.App. W.D.2009). However, allegations in a claim for compensation which are legal conclusions are

not deemed admitted by an employer's untimely answer. *Id.* at 728.

 In this case, in the section of Claimant's claim for compensation titled "average weekly wage," Claimant alleged "max rate." The Commission found that allegation was a legal conclusion and therefore Employer did not admit that the applicable rate of compensation for the award was the maximum rate of compensation for permanent partial disability benefits allowable under section 287.190.5(5). Because Claimant did not provide any evidence as to what her earnings were at the time of the incident, the Commission found that Claimant failed to meet her burden of proving her average weekly wage and therefore the applicable rate of compensation for the award was the minimum rate of $40.00 per week.[9]

Claimant contends the Commission's findings regarding the applicable rate of compensation were erroneous because the allegation in her claim for compensation that her average weekly wage was "max rate" was a factual allegation. She further contends that by filing an untimely answer, Employer admitted that Claimant was entitled to the maximum rate of compensation for permanent partial disability benefits allowable under section 287.190.5(5).

Accordingly, the issue in this point on appeal, which appears to be an issue of first impression, is whether Claimant's allegation that her average weekly wage was "max rate" was a factual allegation or a legal conclusion. This is a question of law which we review de novo. *See Endicott v.*

---

9. *See* section 287.190.5(2) (providing that "[f]or all injuries occurring on or after September 28, 1981, the weekly compensation [for permanent partial disability benefits] shall in no event be less than forty dollars per week"); *Sullivan v. Masters Jackson Paving Co.*, 35 S.W.3d 879, 883, 885–87 (Mo.App.

S.D.2001) ((overruled on other grounds by *Hampton*, 121 S.W.3d at 223, 225) (holding that the Commission did not err in finding that the applicable weekly compensation rate was "the minimum of $40" when claimant failed to meet his burden of proving his average weekly wage)).

*Display Technologies, Inc.*, 77 S.W.3d 612, 615 (Mo. banc 2002) (providing that our review of questions of law is de novo).

### 2. *Aldridge v. Southern Missouri Gas Co.* is Instructive

In determining whether Claimant's allegation that her average weekly wage was "max rate" was a factual allegation or a legal conclusion, we find that *Aldridge v. Southern Missouri Gas Co.*, 131 S.W.3d 876 (Mo.App. S.D.2004) is instructive. In *Aldridge*, the claimant alleged in his claim for compensation that his average weekly wage was $550.00. *Id.* at 878, 882. The Commission awarded claimant worker's compensation benefits at that rate, finding that employer admitted claimant's allegation that his average weekly wage was $550.00 by filing an untimely answer to the claim for compensation. *Id.* at 882. On appeal, employer argued that the Commission erred in finding claimant's wage rate to be $550.00 per week as alleged in his claim because the allegation was a legal conclusion which employer did not admit to by filing an untimely answer. *Id.* The Southern District rejected employer's argument, holding: "Wage rate is a question of fact, to be determined by the Commission according to the computations provid-ed by statute. Given that [employer] failed to file a timely answer, the wage rate as stated on [c]laimant's claim for compensation is to be deemed as admitted by [employer]." *Id.* at 882–83.

Employer attempts to distinguish *Aldridge* because in that case, the claimant alleged in his claim for compensation that he earned a specific dollar amount as his average weekly wage, whereas here Claimant alleged that she earned "max rate." This is an immaterial distinction because, as explained below, the maximum weekly wage rate that Claimant may recover for her award of permanent partial disability benefits is the undisputed and specific dollar amount of $376.55.[10]

As the *Aldridge* Court found, wage rate is to be determined by the computations provided by statute. Section 287.190.5(5) provides in relevant part that: "For all injuries occurring on or after August 28, 1992 ... *the weekly compensation paid [for permanent partial disability benefits] shall not exceed an amount equal to fifty-five percent of the state average weekly wage*" (emphasis added). "The state average weekly wage" is calculated by using the computations set forth in section 288.030.2 RSMo Supp.2007.[11] It is undis-

---

10. We recognize that the maximum weekly wage rate would be a different specific dollar amount had Claimant been awarded temporary total disability benefits, permanent total disability benefits, or death benefits (105% of the state average weekly wage, or $718.87) or had Claimant been injured in a different calendar year. *See* section 287.170.1(4) (temporary total); section 287.200.1(4) (permanent total); section 287.240(2)(d) RSMo 2000 (death); section 288.030.2 RSMo Supp.2007 (calculation of state average weekly wage based upon calendar year); Missouri Division of Worker's Compensation Form WC–110–2 (10–12), http://www.labor.mo.gov/DWC/Forms/WC–110–AI.pdf (last visited Dec. 11 2012). This does not affect our analysis because the specific weekly and total dollar amount of compensation is only determined and applicable after a particular type of benefits have been awarded for a compensable claim and after an injury date has been established. See *id.* and section 287.190.1, .3, and .5(5) (permanent partial disability benefits) as authorities providing for various durations of compensation depending on the type of benefits and providing that the rate of compensation is based on the injured worker's average weekly earnings as of the date of the injury or the maximum rate of compensation effective on the date of injury.

11. Section 288.030.2 specifically provides that: (1) the state average annual wage is computed on June 30th of each year and shall apply to the following calendar year; (2) the state average annual wage is calculated "by dividing the total wages reported as paid for

puted that for an injury, like Claimant's, which occurred between July 1, 2006 and June 30, 2007, fifty-five percent of the state average weekly wage was $376.55. *See* Missouri Division of Worker's Compensation Form WC–110–2 (10–12), http://www.labor.mo.gov/DWC/Forms–WC–110–AI.pdf (last visited Dec. 11, 2012). Thus, it is undisputed that the maximum weekly wage rate that Claimant may recover for her award of permanent partial disability benefits is $376.55.

### 3. Conclusion

The holding in *Aldridge* applies to the circumstances of this case. Wage rate is a question of fact. Given that Employer has failed to file a timely answer, the "max" wage rate as alleged in Claimant's claim for compensation was a factual allegation deemed admitted by Employer. Therefore, Claimant is entitled to the maximum rate of compensation for permanent partial disability benefits, which is $376.55 per week. There was not sufficient competent evidence in the record to support the Commission's finding that the applicable rate of compensation for Claimant's award was $40.00 per week. Point one on cross-appeal is granted.

### III. CONCLUSION

The portion of the Commission's decision awarding Claimant permanent partial disability benefits is affirmed. The portion of the Commission's decision finding that the applicable rate of compensation for the award was $40.00 per week is reversed and remanded. On remand, the Commission shall enter an award finding that Claimant

insured work in the preceding calendar year by the average of mid-month employment reported by employers for the same calendar year"; and (3) the state average weekly wage

is entitled to a rate of compensation of $376.55 per week.

CLIFFORD H. AHRENS, P.J., and SHERRI B. SULLIVAN, J., concur.

is computed by dividing the state average annual wage by fifty-two.