

# In the Missouri Court of Appeals
## Eastern District
### DIVISION THREE

JOHN F. MANESS,

    Respondent,

vs.

CITY OF DE SOTO and
MISSOURI INTERGOVERNMENTAL
RISK MANAGEMENT ASSOCIATION,

    Appellants,

and

TREASURER OF MISSOURI AS
CUSTODIAN OF THE
SECOND INJURY FUND,

    Respondent.

No. ED100074

Appeal from the Labor and
Industrial Relations Commission

Filed: February 25, 2014

## I. INTRODUCTION

The City of De Soto (Employer) and the Missouri Intergovernmental Risk Management Association (Insurer)[1] appeal from a final award of the Labor and Industrial Relations Commission (the Commission). In its award, the Commission ordered Employer and the Treasurer of Missouri as Custodian of the Second Injury Fund (the Fund)[2] to pay workers'

---

[1] Employer and Insurer filed a joint appellants' brief with this court. For ease of reference, we will refer to Employer and Insurer collectively as "Employer."

[2] The Commission ordered the Fund to pay Claimant permanent total disability benefits. The Fund filed in this court a cross-appellant's brief challenging the permanent total disability award.

compensation benefits to John F. Maness (Claimant). Employer argues the Commission erred in: (1) finding Claimant sustained an accident on June 11, 2007; (2) finding the accident was the prevailing factor causing Claimant's neck condition and need for treatment; (3) awarding temporary total disability benefits for a three-month period following Claimant's neck surgery; (4) awarding permanent partial disability benefits based on its finding that Claimant sustained a 40% permanent partial disability as a result of the accident; (5) awarding future medical care; and (6) awarding past medical expenses. We affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Claimant worked for Employer as a working supervisor, performing maintenance for Employer's water, street, sewer, and parks departments. On June 14, 2007, Claimant gave his supervisor a written report stating that he believed he sustained an injury as a result of moving decorative concrete stones "on Tuesday, June 11th, 2007."[3] Employer initially sent Claimant to Dr. Frank Krewet for medical care but later declined to offer further treatment. Claimant obtained treatment on his own from Dr. Philip Poepsel and Dr. Kevin Rutz. Dr. Rutz performed surgery on Claimant's neck in August 2007.

Claimant filed a claim for workers' compensation benefits against Employer and the Fund, alleging that he sustained an accident while working for Employer on June 11, 2007. Claimant stated that the accident caused an injury and disability to his neck, back, arms, and body as a whole. After Claimant filed his claim, Drs. David Kennedy and David Volarich examined Claimant at the request of Claimant's attorney. Dr. Donald deGrange evaluated Claimant at Employer's request.

Claimant and Employer each moved to strike the brief because the Fund did not file a notice of appeal with the Commission. We granted the motions to strike. We allowed the Fund additional time to file a respondent's brief, but the Fund declined to do so.

[3] June 11, 2007 fell on a Monday.

2

An Administrative Law Judge (ALJ) held a hearing on the claim and issued an award allowing compensation.  Claimant, Employer, and the Fund each appealed the ALJ's decision to the Commission.

The Commission issued a final award supplementing the ALJ's findings and conclusions, modifying the award with regard to medical causation, past medical expenses, permanent total disability, and Fund liability, and affirming the decision in all other respects.  The Commission found that Claimant suffered an accident in which he injured his neck while performing his job responsibilities moving stones on or about June 11 or 12, 2007.  The Commission also found that the June 2007 accident was the prevailing factor causing Claimant's medical conditions and disability.  The Commission ordered Employer to pay Claimant temporary total disability benefits for a three-month period following his August 2007 neck surgery and permanent partial disability benefits for his 40% permanent partial disability as a result of the accident.  The Commission ordered Employer to pay $101,769.64 for Claimant's past medical expenses and to provide Claimant future medical care to cure and relieve him from the effects of the injury.  Finally, the Commission ordered the Fund to pay Claimant permanent total disability benefits.  Employer appeals.  We will set forth additional facts relevant to our resolution of this appeal in our analysis of the claims of error.

### III. STANDARD OF REVIEW

On appeal from a decision in a workers' compensation proceeding, this court may modify, reverse, remand for rehearing, or set aside the award upon finding that: (1) the Commission acted without or in excess of its powers; (2) the award was procured by fraud; (3) the facts found by the Commission do not support the award; or (4) there was not sufficient competent evidence in the record to warrant the making of the award.  Mo. Rev. Stat.

3

§ 287.495.1.[4]   We must consider the whole record to determine whether it contains sufficient competent and substantial evidence to support the award, and we will set aside the Commission's award only if it is contrary to the overwhelming weight of the evidence. *Miller v. Mo. Highway & Transp. Comm'n*, 287 S.W.3d 671, 672 (Mo. banc 2009).

We defer to the Commission on issues of fact, credibility of witnesses, and weight to be given conflicting evidence. *Hager v. Syberg's Westport*, 304 S.W.3d 771, 773 (Mo. App. E.D. 2010).   When the evidence before the Commission could warrant either of two opposing findings, this court is bound by the Commission's finding, and it is irrelevant that the record contains evidence supporting a contrary conclusion. *Hornbeck v. Spectra Painting, Inc.*, 370 S.W.3d 624, 629 (Mo. banc 2012).

## IV. DISCUSSION

### A. Accident on June 11, 2007

In its first point on appeal, Employer argues the Commission's finding that Claimant sustained an accident on June 11, 2007 was contrary to the overwhelming weight of the competent and substantial evidence because it was supported only by Claimant's testimony. Employer contends Claimant's testimony that he sustained an accident on June 11, 2007 was without credibility and probative value because it was refuted by his unsworn accounts to doctors about the incident and time records showing he did not work that day.  We disagree.

An employer is "liable, irrespective of negligence, to furnish compensation under the provisions of [the Workers' Compensation Law] for personal injury . . . of the employee by accident arising out of and in the course of the employee's employment . . . ."  Mo. Rev. Stat.

---

[4] All statutory references are to RSMo (Supp. 2007), the version in effect at the time of the injury. *See Farmer-Cummings v. Pers. Pool of Platte County*, 110 S.W.3d 818, 821 n.7 (Mo. banc 2003).

4

§ 287.120.1.  For purposes of the Workers' Compensation Law, the word "accident" means "an unexpected traumatic event or unusual strain identifiable by time and place of occurrence and producing at the time objective symptoms of an injury caused by a specific event during a single work shift."  Mo. Rev. Stat. § 287.020.2.

Based on Claimant's testimony and his reports to doctors and Employer, the Commission determined that Claimant suffered an accident in which he injured his neck while performing his job responsibilities moving stones on or about Monday, June 11 or Tuesday, June 12, 2007.  At the hearing, Claimant testified on direct examination that when he arrived at work "on or about" June 11, his superintendent instructed him to clean up a site containing job materials, including "six or eight pallets of stones, decorative stones" made of concrete and weighing sixty to sixty-five pounds each.  Claimant stated that some of the stones had fallen off the pallets, so he had to pick them up, restack them, and move them.  Claimant testified that during that process he felt a burning sensation in his neck but continued working the rest of the day because he thought he had pulled a muscle.  Claimant stated that he did not report the burning sensation that day at work and that a day and a half later he felt tingling and pain in his left arm, hand, and fingers.  Claimant introduced a written report of the injury that he submitted to Employer on June 14.  The report described the incident and stated that it occurred "on *Tuesday*, June 11th, 2007." (emphasis added).

On cross-examination, Employer questioned Claimant about the date of the incident:

Q. Now, if your time records for [Employer] indicate that you didn't work on June 11th, does that affect what you have to say here today?
A. That would probably affect anybody's.
Q. Okay.  Do you know if it was June 11th or June 10th or June 12th or . . .?
A. Yeah, I believe it was the 11th.

On redirect examination, the following exchange occurred:

5

Q. There's records in evidence here, one is a report from . . . your supervisor saying that you told him it was actually June 12th and then another thing is work records showing that you worked on the 12th and not the 11th; and so I guess my question to you is[,] knowing that information are you still insisting it was the 11th or could it have been the 12th?
A. Apparently it was the 12th. I was mistaken on the dates.

The Commission found Claimant's testimony that he injured his neck while moving decorative stones for Employer was credible "other than the inconsistency concerning the date."

The testimony and written reports of Drs. Kennedy, Volarich, and deGrange reveal that Claimant described the incident at work and ensuing neck pain to all three doctors in a manner consistent with his testimony at the hearing. Dr. Kennedy testified that Claimant reported the event occurring on June 11. According to Dr. Volarich's written report, Claimant informed him it occurred "on or about" June 11. Finally, Dr. deGrange testified that Claimant reported the event occurring "sometime around June 11." This evidence, together with Claimant's testimony, constitutes sufficient competent and substantial evidence to support the Commission's determination that an accident occurred on or about June 11 or 12, 2007.

Employer argues the following evidence refutes Claimant's testimony about the alleged accident: (1) Employer's records showing Claimant worked on June 12 but not June 11; (2) Employer's records showing Claimant worked forty hours per week from June 12 through June 29, which "is inconsistent with having sustained a significant injury" on June 11; (3) according to Dr. Rutz's records, Claimant advised him the accident occurred on June 20; (4) a radiologist's report for x-rays taken on June 14 states "no history of injury"; and (5) the records of Dr. Krewet state: "on June 11, 2007 (or June 12, 2007) [Claimant] was operating a loader and noticed numbness in the left hand." Employer's argument is merely a challenge to the weight of the evidence and Claimant's credibility as a witness. "We give deference to the

6

Commission in these areas." *Duever v. All Outdoors, Inc.*, 371 S.W.3d 863, 866 (Mo. App. E.D. 2012).

We also reject Employer's contention that "where, as here, there exists a conflict between employee's testimony and unsworn accounts given by employee to treating or evaluating physicians regarding the onset or duration of his complaints or date of injury, the Commission should reject employee's testimony and deny his claim." To support this proposition, Employer cites *Walker v. Skaggs Community Hospital*, 935 S.W.2d 370 (Mo. App. S.D. 1996). Employer overstates the holding and reach of *Walker*. In only two sentences addressing the merits of the appeal, the *Walker* court found the Commission did not plainly err by denying the claim because the Commission was not required to believe the claimant's testimony and she "gave unsworn accounts of the fall that conflicted with her testimony." 935 S.W.2d at 373. The *Walker* court provided no details about the unsworn accounts and did not explain how they conflicted with the claimant's testimony. *Id.* Thus, even assuming the instant case required us to resolve a conflict between Claimant's testimony and his unsworn accounts of the accident to doctors, *Walker* provides no guidance. In any event, *Walker* is distinguishable because here, the Commission found Claimant credible. Point one is denied.

### B. Compensable Injury

In its second point on appeal, Employer asserts the Commission erred in finding the accident was the prevailing factor causing Claimant's neck condition and need for treatment because the finding was contrary to the overwhelming weight of the evidence. In particular, Employer claims the Commission's finding was erroneous because: (1) Claimant's medical records and diagnostic studies showed that Claimant had degenerative disc disease in the cervical spine and neck symptoms prior to the accident; (2) Drs. Krewet and deGrange found that

7

Claimant's neck condition was preexisting and that the accident merely caused a cervical strain; and (3) Drs. Volarich and Kennedy, whom the Commission found credible, based their opinions on an incorrect and incomplete medical history. We disagree.

Under section 287.020.3(1), "[a]n injury by accident is compensable only if the accident was the prevailing factor in causing both the resulting medical condition and disability." Mo. Rev. Stat. § 287.020.3(1). "'The prevailing factor' is defined to be the primary factor, in relation to any other factor, causing both the resulting medical condition and disability." *Id.* "The determination of whether a particular accident is the 'prevailing factor' causing an employee's condition . . . is inherently a factual one . . . ." *Leake v. City of Fulton*, 316 S.W.3d 528, 532 (Mo. App. W.D. 2010).

The Commission credited Claimant's testimony as well as the opinions of Drs. Kennedy and Volarich in analyzing whether Claimant sustained a compensable injury under section 287.020.3(1). Claimant testified that prior to the work accident, he had two car accidents affecting his neck and arms. Claimant stated that the first car accident occurred in 1996 and that his neck "got stiff, sore." Claimant stated that doctors prescribed muscle relaxants and pain medication and that his neck symptoms disappeared after six months. Claimant testified that the second car accident in 2002 caused soreness in his neck and pain going up and down his arms. Claimant stated that doctors gave him pain medication and that after a year or so he was improving. Claimant also testified as follows:

> Q. In the two or three years before June of '07, how [were] your neck and arms?
> A. I believe I was doing pretty good.
> Q. Were you having any complaints in your neck or arms?
> A. I don't think so.
> Q. Were you going to see any doctors for neck or arm complaints?
> A. No, I don't believe so.

8

Dr. Kennedy testified that he examined Claimant a few months after his August 2007 neck surgery. Dr. Kennedy stated that it was his opinion within a reasonable degree of medical certainty that the work injury was "the prevailing cause in his production of pain and need for surgical treatment." Specifically, Dr. Kennedy stated that the work injury was the prevailing factor in causing disc herniations at C4-5, 5-6, and 6-7, "but most prominently at C5-6 and C6-7."

Dr. Volarich evaluated Claimant in 2011 and prepared a written report of his findings. In the report, Dr. Volarich concluded that Claimant's June 2007 work accident was "the *prevailing or primary factor* causing the disc herniation at C6-7 to the left as well as causing the aggravation of underlying and previously asymptomatic degenerative disc disease and degenerative joint disease at C4-5 and C5-6 all of which required surgical repairs." (emphasis added).

The Commission found Drs. Kennedy and Volarich more credible on this issue than Dr. deGrange, who concluded that the work accident was not the primary factor causing Claimant's need for surgery. The Commission concluded that the work accident was the prevailing factor causing the resulting medical conditions and associated disability of a disc herniation at C6-7 to the left, as well as the aggravation of underlying and previously asymptomatic degenerative disc disease and degenerative joint disease at C4-5 and C5-6. We defer to these credibility determinations and factual findings, and we find that sufficient competent and substantial evidence supports the Commission's determination that Claimant sustained a compensable injury. *See, e.g.*, *T.H. v. Sonic Drive In of High Ridge*, 388 S.W.3d 585, 591-92 (Mo. App. E.D. 2012).

Employer claims the Commission's conclusion was erroneous under section 287.190.6(2) because "the undisputed medical records" and "objective diagnostic studies" (x-rays and MRIs) showed that Claimant had degenerative disc disease in the cervical spine and neck symptoms prior to the work accident. Section 287.190.6(2) provides that "[i]n determining compensability and disability, where inconsistent or conflicting medical opinions exist, objective medical findings shall prevail over subjective medical findings." Mo. Rev. Stat. § 287.190.6(2). "Objective medical findings are those findings demonstrable on physical examination or by appropriate tests or diagnostic procedures." *Id.*

The record makes clear that the Commission considered Claimant's medical records and MRIs, which revealed cervical spine issues after the 1996 and 2002 car accidents that worsened significantly after the 2007 work accident. The Commission found credible the opinions of Drs. Kennedy and Volarich, each of whom stated that he "personally reviewed" Claimant's MRI following the 2002 car accident and his MRI following the 2007 work accident. Dr. Kennedy stated that the 2002 MRI revealed "*some* osteophyte formation with a *mild amount* of foraminal encroachment at C5-6" but that "C6-7 was basically *normal*." (emphasis added). By contrast, Dr. Kennedy testified that the 2007 MRI "demonstrated a *large* disc herniation with *significant* canal foraminal encroachment at C5-6 and similar findings at C6-7." Similarly, Dr. Volarich stated:

> The MRI scans of the cervical spine, when directly comparing the 10/17/02 study to the 7/2/07 study, demonstrate *a clear change at the C6-7 level* consistent with the left sided herniation that was removed at the time of [Claimant's] surgical repair on 8/22/07. The C4-5 and C5-6 disc osteophyte complexes *enlarged significantly* from the 10/17/02 study when compared to the 7/2/07 study.

(emphasis added).

10

Additionally, for an injury by accident to be compensable, "Section 287.020.3(1) requires that the work-related injury be the 'primary factor' in causing the disability at issue, not the sole factor." *Sickmiller v. Timberland Forest Products, Inc.*, 407 S.W.3d 109, 121 (Mo. App. S.D. 2013). Thus, we reject Employer's contention that the mere existence of degenerative disc disease in the cervical spine and neck symptoms prior to the work accident requires a determination that Claimant's injury is not compensable.

Employer also maintains that the Commission should have credited the opinions of Drs. Krewet and deGrange instead of the opinions of Drs. Kennedy and Volarich. However, our standard of review requires us to defer to the Commission on credibility issues. *Sonic Drive In of High Ridge*, 388 S.W.3d at 592. "Moreover, the weight to be given to a medical expert's opinion is exclusively within the discretion of the Commission, and where the right to compensation depends on which of two medical theories should be accepted, the issue is peculiarly for the Commission's determination." *Id.* (quotation omitted). Finally, we find no basis in the record to substantiate Employer's argument that Drs. Kennedy and Volarich based their opinions on an incorrect and incomplete medical history.

Because Claimant's accident was the prevailing factor in causing both his resulting medical condition and disability, the Commission did not err in finding that a compensable injury occurred. Point two is denied.

### C. Temporary Total Disability

In its third point on appeal, Employer contends the Commission erred in finding Claimant was temporarily and totally disabled for approximately three months following his August 2007 neck surgery and awarding temporary total disability benefits for that period. Specifically, Employer alleges that the accident was not the prevailing factor causing Claimant's neck

11

condition and that any need Claimant had for the surgery was the result of his preexisting degenerative condition.  We disagree.

"Once a compensable injury is found, the inquiry turns to the calculation of compensation or benefits to be awarded."  *Tillotson v. St. Joseph Med. Ctr.*, 347 S.W.3d 511, 517 (Mo. App. W.D. 2011).  "The compensation or benefits which can be awarded an injured employee include medical treatment (section 287.140), temporary total disability (section 287.170), and permanent partial or permanent total disability (section 287.190 and section 287.200)."  *Id.* at 517-18. "Each of these statutes presumes, by express reference, that an 'injury' has occurred; i.e., that the initial determination required under section 287.120.1 has already been made."  *Id.* at 518. "Stated differently, each of these statutes presumes that the 'prevailing factor' test described in section 287.020.3(1) has already been applied to permit the conclusion that a compensable injury has occurred."  *Id.*  Having determined in points one and two that the Commission did not err in concluding that a compensable injury by accident occurred, we decline to address Employer's arguments in points three, four, and six that Claimant failed to show an accident that was the prevailing factor causing his condition and need for treatment.

"For temporary total disability the employer shall pay compensation for not more than four hundred weeks during the continuance of such disability . . . ."  Mo. Rev. Stat. § 287.170.1. "The purpose of temporary total disability benefits is to cover the employee's healing period, so the award should cover only the time before the employee can return to work."  *Cardwell v. Treasurer of State of Mo.*, 249 S.W.3d 902, 909 (Mo. App. E.D. 2008).  "An employee is entitled to recover compensation for disability . . . necessitated by treatment reasonably required to cure or relieve a compensable injury."  *Tillotson*, 347 S.W.3d at 522-23.

The record contains competent and substantial evidence supporting the Commission's award of temporary total disability benefits for Claimant's healing period following the surgery. The record demonstrates that Dr. Rutz performed a cervical fusion on Claimant on August 22, 2007 and that Claimant was off work from that date until November 19, 2007. Dr. Kennedy testified that the June 2007 work injury was the "prevailing cause in [Claimant's] need for surgical treatment." Dr. Kennedy also stated that the medical treatment Claimant received, including the August 2007 surgery, was "reasonable and necessary to cure and relieve the effects" of Claimant's "acute cervical radiculopathy from disc abnormalities at C4-5, C5-6, and C6-7, most prominent [at] 5-6 and 6-7." Likewise, Dr. Volarich opined that the work accident caused Claimant's disc herniation at C6-7 and the aggravation of degenerative disc and joint disease at C4-5 and C5-6, "all of which required surgical repairs." The Commission credited Dr. Volarich's testimony and found that Claimant's surgery "was necessary owing to the symptoms [Claimant] experienced as a result of the work injury."

Employer asserts that the award of temporary total disability benefits was not supported by competent and substantial evidence because Dr. deGrange determined that Claimant's surgery was necessary not because of the work accident but because of his preexisting degenerative condition. However, the Commission found Dr. Volarich credible on this matter. As previously discussed, we defer to the Commission on issues involving the credibility of witnesses and the weight to be given a medical expert's opinion. *See Sonic Drive In of High Ridge*, 388 S.W.3d at 592. Point three is denied.

### D. Permanent Partial Disability

In its fourth point on appeal, Employer asserts the Commission erred in finding Claimant sustained a 40% permanent partial disability (PPD) from the accident and awarding PPD

benefits. Citing Dr. deGrange's opinion, Employer contends the overwhelming weight of the evidence showed that Claimant's preexisting degenerative condition necessitated the surgery and work restrictions and that the work accident merely caused a cervical strain that resulted in no permanent disability. We disagree.

"'Permanent partial disability' means a disability that is permanent in nature and partial in degree . . . ." Mo. Rev. Stat. § 287.190.6(1). "For permanent partial disability, which shall be in addition to compensation for temporary total disability . . . , the employer shall pay to the employee compensation . . . ." Mo. Rev. Stat. § 287.190.1.

"[T]he extent and percentage of disability is within the special province of the Commission to determine." *Taylor v. Labor Pros L.L.C.*, 392 S.W.3d 39, 45 (Mo. App. W.D. 2013). "The Commission may consider all the evidence, including the testimony of the employee, and draw all reasonable inferences in arriving at the percentage of disability." *Id.* "The Commission is not bound by the experts' exact percentages of disability and is free to find a disability rating higher or lower than that expressed in medical testimony." *Tillotson*, 347 S.W.3d at 523 (quotation omitted).

Here, Dr. Volarich concluded after examining Claimant:

> There is a *45% permanent partial disability* of the body as a whole rated at the cervical spine due to the disc herniation at C6-7 to the left causing left arm radiculopathy as well as the aggravation of underlying degenerative disc disease and degenerative joint disease at C4-5 and C5-6 all of which required a 3 level fusion from C4 through C7. The rating accounts for *this injury's contribution* to his neck pain syndrome, lost motion and continuing left upper extremity paresthesias.

(emphasis added). The Commission found that Claimant sustained a 40% PPD as a result of the work accident and ordered Employer to pay PPD benefits to Claimant. The Commission was

14

free to make this determination after considering all the evidence, including Dr. Volarich's opinion, and it was not bound by Dr. Volarich's exact percentage of disability.

Employer alleges that the Commission erred in finding Dr. Volarich's opinion more credible than that of Dr. deGrange, who concluded that Claimant sustained no PPD as a result of the work accident. As stated above, we defer to the Commission on credibility issues and the weight to be given a medical expert's opinion. *See Sonic Drive In of High Ridge*, 388 S.W.3d at 592. Point four is denied.

### E. Future Medical Care

In its fifth point on appeal, Employer maintains the Commission erred in awarding future medical care to Claimant. Employer asserts the competent and substantial medical evidence demonstrated: (1) the accident caused only a cervical strain that healed and required no additional treatment; (2) any need Claimant has for future treatment is due to his preexisting degenerative disease; and (3) Dr. Volarich's testimony merely showed a possibility that Claimant will require additional treatment. We disagree.

Under section 287.140.1, an employer must provide such care "as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury." Mo. Rev. Stat. § 287.140.1. "This includes allowance for the cost of future medical treatment." *Pennewell v. Hannibal Reg'l Hosp.*, 390 S.W.3d 919, 926 (Mo. App. E.D. 2013). "An award of future medical treatment is appropriate if an employee shows a reasonable probability that he or she is in need of additional medical treatment for the work-related injury." *Id.* "An employer will be responsible for future medical benefits only if the evidence establishes to a reasonable degree of medical certainty that the need for future medical care flows from the accident."

15

*Sickmiller v. Timberland Forest Products, Inc.*, 407 S.W.3d 109, 122 (Mo. App. S.D. 2013) (quotation omitted).

Dr. Volarich testified that it was his opinion within a reasonable degree of medical certainty that Claimant would benefit from additional medical treatment attributable to the work injury. Dr. Volarich stated:

> When I saw him he was just taking some over-the-counter Advil on most days every four hours as needed for pain. That's probably sufficient. *But if he has a flare-up, he'll need something more*. He'll need some narcotics, some muscle relaxants, probably some physical therapy type treatments to help control his pain syndrome.

(emphasis added). Dr. Volarich's testimony is competent and substantial evidence showing a reasonable probability that Claimant will need additional medical treatment for the work-related injury. Accordingly, the Commission did not err in ordering Employer to provide ongoing treatment to cure and relieve Claimant from the effects of the injury.

Employer argues that other evidence in the record, primarily Dr. deGrange's opinion, demonstrates that Claimant requires no additional treatment to cure or relieve any injury he sustained from the work accident. However, the Commission found Dr. deGrange was not credible on this issue because he "was operating under the assumption that [Claimant] had only a cervical strain," which "is not the case." "We do not reweigh the evidence; the Commission is the judge of the weight to be given to conflicting evidence and the credibility of the witnesses." *Palmentere Bros. Cartage Serv. v. Wright*, 410 S.W.3d 685, 691 (Mo. App. W.D. 2013) (quotation omitted). Point five is denied.

### F. Past Medical Expenses

In its sixth point on appeal, Employer contends the Commission erred in awarding Claimant past medical expenses because he failed to satisfy his burden of proof under *Martin v.*

16

*Mid-America Farm Lines, Inc.*, 769 S.W.2d 105 (Mo. banc 1989), and *Farmer-Cummings v. Personnel Pool of Platte County*, 110 S.W.3d 818 (Mo. banc 2003).[5] We disagree.

### 1. Employer's Liability for Past Medical Expenses

As we noted above, section 287.140.1 requires an employer to provide such care "as may reasonably be required after the injury or disability, to cure and relieve from the effects of the injury." Mo. Rev. Stat. § 287.140.1. A claimant seeking past medical expenses must prove "that the need for treatment and medication flow[s] from the work injury." *Tillotson v. St. Joseph Med. Ctr.*, 347 S.W.3d 511, 519 (Mo. App. W.D. 2011). A sufficient factual basis exists for the Commission to award compensation for past medical expenses when: (1) the claimant introduces his medical bills into evidence; (2) the claimant testifies that the bills are related to and the product of his work injury; and (3) "the bills relate to the professional services rendered as shown by the medical records in evidence." *Martin*, 769 S.W.2d at 111-12, *superseded by statute on other grounds*, 1990 Mo. Legis. Serv. S.B. 751, Mo. Rev. Stat. § 287.160.3. "The employer, of course, may challenge the reasonableness or fairness of these bills or may show that the medical expenses incurred were not related to the injury in question." *Martin*, 769 S.W.2d at 112.

To support his request for reimbursement of medical expenses, Claimant introduced his treatment records from Des Peres Hospital, Dr. Rutz, and Dr. Poepsel. Claimant also introduced bills from those providers as Exhibit K. Claimant testified that Employer provided some medical care immediately after the accident but later declined to provide further treatment. Claimant stated that he subsequently sought treatment on his own for the work injury, including the

---

[5] Employer also argues that: (1) Claimant failed to show the accident was the prevailing factor causing his neck condition and need for treatment; and (2) the prevailing factor in Claimant's need for fusion surgery was his preexisting degenerative disease. We disposed of these arguments in our discussion of points one, two, and three.

17

August 2007 surgery. Claimant testified that he had seen Exhibit K and that it contained copies of the bills he received for the treatment he sought on his own for the work injury. The bills, Claimant's testimony identifying the bills, and the accompanying medical records constitute a sufficient factual basis under *Martin* for the Commission's award of past medical expenses. *See id.* at 111-12.

Relying on *Martin*, Employer asserts that Claimant's testimony was without credibility or probative value because he stated that he did not know if he could read and understand Exhibit K and that he did not know "the specifics, the detail of what's included in Exhibit K." However, we find nothing in *Martin* requiring a claimant to testify that he can read and understand the specifics of the medical bills.[6] Instead, the *Martin* court found sufficient the claimant's testimony identifying the bills "as being related to and the product of her injury." *Id.* at 111.

### 2. Credits Due Employer

Employer argues that it was entitled to a credit on the past medical expenses award for amounts that Claimant's health insurer paid to his medical providers. Section 287.270 provides: "No savings or insurance of the injured employee, nor any benefits derived from any other source than the employer or the employer's insurer for liability under this chapter, shall be considered in determining the compensation due hereunder . . . ." Mo. Rev. Stat. § 287.270. "This section clearly was intended to allow the employee to benefit from any collateral source the employee might have available to him or her, independent of the employer, whether purchased or not." *Farmer-Cummings*, 110 S.W.3d at 822. "If the employer has not provided such a source, the employer has no right under the statute to claim benefit from it." *Id.* "Payments from an insurance company or from any source other than the employer or the

---

[6] We also note that the bills in Exhibit K contain such unintelligible entries as "ANS ESPH STH" and "SPNG PEANUT."

employer's insurer for liability for Workmen's Compensation are not to be credited on Workmen's Compensation benefits." *Shaffer v. St. John's Reg'l Health Ctr.*, 943 S.W.2d 803, 807 (Mo. App. S.D. 1997) (quotation omitted).

The evidence shows, and Employer does not dispute, that Claimant's health insurer paid a portion of his medical bills. Employer does not assert that these payments came from Employer or its workers' compensation insurer. As a result, under section 287.270, no credit was due Employer for the amounts paid by the health insurer. The Commission did not err in awarding those amounts to Claimant. *See id.* at 808.

Employer also contends it was entitled to a credit for fee reductions negotiated between Claimant's health insurer and his medical providers. When a claimant carries his burden under *Martin* by producing documentation detailing past medical expenses and testifying to the relationship of the expenses to the compensable injury, the employer may raise a defense. *Farmer-Cummings*, 110 S.W.3d at 822-23. Specifically, the employer may establish that the claimant "was not required to pay the billed amounts, that [his] liability for the disputed amounts was extinguished, and that the reason that [his] liability was extinguished does not otherwise fall within the provisions of section 287.270." *Id.* at 823. If a medical provider has allowed write-offs and fee reductions for its own purposes and the claimant is not legally subject to further liability, then the claimant is not entitled to a windfall recovery. *Id.* On the other hand, if the claimant "remains personally liable for any of the reductions, [he] is entitled to recover them as 'fees and charges' pursuant to section 287.140." *Id.* The employer carries the burden of proving by a preponderance of the evidence that it is entitled to a credit for write-offs and fee reductions. *Id.*; *Proffer v. Fed. Mogul Corp.*, 341 S.W.3d 184, 190 (Mo. App. S.D. 2011).

19

Here, Employer attempted to establish that Claimant had no liability for the fee reductions by introducing an affidavit of Des Peres Hospital employee Grace Ya. In Ms. Ya's affidavit, she stated that she is the custodian of records for medical billing at Des Peres Hospital and that she personally reviewed Claimant's account information. Ms. Ya stated that:

1) For services on August 13, 2007, "facility billing records indicate an initial charge of $678.00 that was reduced to $314.79" and paid by Claimant; and

2) For services on August 22, 2007, "facility billing records indicate an initial charge of $52,178.68[7] that was reduced to $31,033.96" and paid by Claimant's health insurance provider, AETNA.

Ms. Ya stated that the billing records show Claimant has no outstanding obligation to pay amounts related to the August 2007 services.

Ms. Ya's affidavit is insufficient to prove that Claimant's liability to Des Peres Hospital for the fee reductions has been extinguished. The record contains documents Claimant signed in 2007 and 2008 agreeing to be responsible "for the total charges for services rendered" by Des Peres Hospital. Ms. Ya did not purport to have any authority to fix, change, or extinguish a patient's liability for medical expenses. In addition, Ms. Ya's affidavit does not state whether Des Peres Hospital allowed the fee reductions for its own purposes, *Farmer-Cummings*, 110 S.W.3d at 823, or whether it would have made the reductions in the absence of Claimant's health insurance policy.

Similarly, the testimony of Brenda Grawe that Employer presented is insufficient to show that Claimant's liability to his providers for the fee reductions has been extinguished. Ms. Grawe testified that she is the finance director for Employer. Ms. Grawe stated that in her

---

[7] The medical bills Claimant introduced as Exhibit K show a charge of $51,178.64 for this date.

experience, no employee participating in Employer's group health plan had any liability beyond a co-payment or deductible for any billed amount exceeding the amount the insurer paid for a service. However, Ms. Grawe did not claim to have any particular knowledge about Claimant's liability to the medical providers in this case.

Given the insufficiency of Ms. Ya's affidavit and Ms. Grawe's testimony, Employer failed to carry its burden of proving that it was entitled to a credit for the fee reductions. Accordingly, the Commission did not err in ordering Employer to reimburse Claimant for the full amount billed by Des Peres Hospital, Dr. Rutz, and Dr. Poepsel.

*3. Direct Payment of Expenses to Claimant*

Employer's final argument in point six is that the Commission erred in ordering Employer to pay the past medical expenses directly to Claimant because the Workers' Compensation Law contemplates payment to Claimant's medical providers or health insurer. "However, in cases where the employer has initially denied liability, the courts have affirmed awards of medical costs to the employee." *Wiedower v. ACF Indus., Inc.*, 657 S.W.2d 71, 75 (Mo. App. E.D. 1983). "Although making an award of such costs to the employee may result in a windfall, the insurance company may be entitled to reimbursement from the employee." *Id.* "The fact that claimant has accepted benefits from another source does not estop him for asserting his rights to compensation under the act." *Id.*

In addition, section 287.140.13(6) permits the administrative law judge to order direct payment to a medical provider whose services have been authorized in advance by the employer or insurer. Mo. Rev. Stat. § 287.140.13(6). Here, the Commission noted that no provider had given notice pursuant to that statute of a claim for fees for services authorized in advance by

21

Employer.  Thus, the Commission properly ordered Employer to pay Claimant directly for his past medical expenses.  Point six is denied.

## V. CONCLUSION

The Commission's award is affirmed.


_____
Angela T. Quigless, Judge

Mary K. Hoff, P.J., and
Kurt S. Odenwald, J. Concurs.